## NEW YORK INSULATED WIRE CO. v. BROADNAX.

(Circuit Court of Appeals, Second Circuit. March 6, 1900.)

### No. 102.

EMPLOYMENT—RIGHT TO DISCHARGE.

The making of an improvident contract by an electrical engineer with his assistants, which is corrected, at his employer's request, as soon as made, does not, as matter of law, justify his discharge, but is to be considered on the question of his alleged misconduct in acting against the employer's pecuniary interest and in failing to render faithful service.

In Error to the Circuit Court of the United States for the Southern District of New York.

The defendant in error (hereinafter called the "plaintiff"), as assignee of the claim of Francis Broadnax against the plaintiff in error, the New York Insulated Wire Company (hereinafter called the "defendant"), for damages for the breach of a contract of employment, brought an action at law against it in the circuit court for the Southern district of New York, and recovered a verdict for $2,818.99, upon which verdict judgment was entered. This writ of error was brought to review that judgment.

Henry B. Twombly, for plaintiff in error.
Henry A. Bowman, for defendant in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. On July 5, 1892, the defendant employed Francis Broadnax as electrical engineer for two years from August 20, 1892, at the salary of $4,000 per annum. The immediate engineering work which he was to enter upon was to make plans for, have the charge of, and inspect the work incident to the defendant's subcontract with the Westinghouse Electric & Manufacturing Company for wiring at the World's Fair. The last-named company had the contract for the entire electrical work. This subcontract was one of importance, for it required the use of nearly 2,000,000 feet of wire, and the installation of between 63,000 and 64,000 lights, upon ground about one and one-half miles long, and, exclusive of the Midway, from a half mile to three-fourths of a mile wide. This work was completed with reasonable promptness, in view of unforeseen requirements and changes by the officers of the World's Fair, was turned over to the Westinghouse Company on June 28, 1893, and was apparently accepted. Broadnax was discharged the day before. After his discharge the defendant continued to do electrical work in the buildings until November, 1893. At first Broadnax had charge of the work, with two of the witnesses, Swallow and Harris, as his assistants. Swallow was assistant engineer. His duty was to lay out the plans for the work, and he had some part in seeing that they were executed, while Harris had direct charge of the men at work, and also saw that the plans were carried into effect. In February, 1893, James W. Godfrey was appointed by the defendant its business manager in the Fair, and remained in Chicago until August, 1893. Upon the trial, the plaintiff rested, after having put Broadnax upon the stand to make out his prima facie case, who was subjected to a brief cross-examination. The defendant introduced its witnesses, and, after it rested, Broadnax briefly contradicted some of their statements. The defendant endeavored to justify the discharge by testimony of alleged misconduct in the following respects:

"(1) He was generally inattentive to his work, and did not give his personal inspection to the work, as he had agreed to do, and as ordered more than once by the company, with resultant loss to the company, as hereinafter more fully set forth. (2) He disobeyed express orders of the company. (3) He did not give proper supervision to the work of the Standard Underground Cable Company under its subcontract, with the result that company never had any complete report of the work of the cable company, to its disadvantage in its suit against the cable company. (4) He knowingly employed unnecessary, useless, and incompetent workmen, at the expense and to the detriment of the company. (5) He used the services of employés of the company as spies upon other workmen employed by Godfrey, the business manager of the company, in his fight against Godfrey. (6) He knowingly made contracts of employment with Swallow and Harris which were improvident and unauthorized. (7) He made negligently inaccurate reports to the company. (8) He purposely failed and neglected to attend the joint meetings of the heads of the various departments of the electrical work at the Fair, though it was a part of his duty, and though he was frequently requested, to do so.

(9) He knowingly and willfully attempted to get Swallow and Harris to be unfaithful to their duties to the company."

The defendant's principal witnesses were Gallaher, the secretary and managing director of the defendant, who was at the World's Fair 17 or 18 times during Broadnax's term of service; Harris, Swallow, and Ruebel, the president of a St. Louis corporation which had a subcontract with the defendant in its wiring business at the Fair. Godfrey, though in court at the trial, was not examined. The defendant, being of opinion that these witnesses made out a strong case, and that the discharge was justified on the facts as shown by undisputed evidence, moved, at the close of the entire testimony, for a direction of a verdict for the defendant, which was denied. It will be seen, by looking at the charges of misconduct, that much of the evidence in support of them would naturally rest upon Swallow and Harris, who were the daily assistants of Broadnax. Harris testifies that the most marked alleged acts of infidelity to the pecuniary interests of the defendant were committed with his help. They testified that idlers and incompetent persons were kept upon the pay roll by the orders of Broadnax; that he attempted to induce them to be unfaithful and to delay the work; that he disobeyed the defendant's general order which required him to be in the office daily between certain hours, and to be upon the work at other times. Gallaher testified in regard to his inattention to business, his lack of push, and the unexpected cost of the work. Swallow testified that Broadnax was in the office, day after day, in idleness, and Ruebel testified that he could not be found during the office hours. The witnesses Swallow and Harris testified with sufficient vigor, but the testimony of Harris shows that its value was uncertain, and with respect to the main uncontradicted point, in regard to neglect to attend the joint meetings of the heads of the various departments at the World's Fair, its importance, as it came from the lips of the witnesses, was because it corroborated the views of Gallaher respecting the laziness and inattention to business of Broadnax, rather than because of itself it constituted a cause of discharge. The question of the existence of adequate reasons for the discharge properly belonged to the jury.

The next point is that the omission or the refusal to charge as requested in divers particulars, especially that the omission to charge that a verdict for the defendant must result if certain particularly specified acts were found to have been committed, was erroneous and misled the jury. The defendant presented 22 requests to charge. Many of them were intended to direct the attention of the jury to particular acts, and called upon the court to instruct them that, if a particular act was found to have occurred, discharge was justifiable. The omissions to charge the requests from 5 to 13 are the alleged errors which are chiefly relied upon, and which are as follows:

"(5) If the jury believes that Broadnax did not give daily and personal inspection to the work of the New York Insulated Wire Company, as ordered and directed by said wire company, and thereby became unfamiliar with its work, to the damage of the wire company, then the discharge of Broadnax was justifiable. (6) If the jury believe that Broadnax did not give proper inspection of the work of the Standard Underground Cable Company, that

Broadnax did not obtain proper reports of the work of the Standard Underground Cable Company, so as to make it impossible for the New York Insulated Wire Company to know the character of the work performed by the Standard Underground Cable Company, to the detriment of the New York Insulated Wire Company, then the discharge of Broadnax was justified, and the verdict of the jury should be for the defendant. (7) If the jury believe that Broadnax refused and neglected to attend the meetings between the chief engineer of the World's Fair, the Westinghouse Company, the Standard Underground Cable Company, and the New York Insulated Wire Company, purposely and without good excuse, and by reason of such refusal and neglect became unable to properly direct the work of the New York Insulated Wire Company, in accordance with his contract of employment as chief engineer, then his discharge was justifiable. (8) If the jury believe that, because of his disagreement with Godfrey, who had been sent to Chicago as head of the business department of the New York Insulated Wire Company, Broadnax neglected his work, and employed his time and that of his men in his quarrel with Godfrey, then his discharge was justifiable. (9) If the jury believe that Broadnax told Harris to make the work at the World's Fair cost as much as possible to the New York Insulated Wire Company, and Harris, acting under such orders, employed an unnecessary number of men upon the work, then his discharge was justifiable. (10) If the jury believe that Broadnax ordered that a man whose name was Andy Anderson should be kept on the pay rolls in spite of the fact that he did little, if any, work, and, in accordance with such orders, Harris did keep said Anderson on the pay rolls, and punched full time for him, then the discharge of Broadnax was justified. (11) If the jury believe that Broadnax told Swallow to make the work cost as much as possible to the New York Insulated Wire Company, then the discharge of Broadnax was justifiable. (12) If the jury believe that Broadnax purposely and knowingly acted against the interest of the company, in any way, in the discharge of his contract, then his discharge was justifiable. (13) If the jury believe that Broadnax knowingly and without authority entered into a contract with Harris and Swallow, whereby it was provided that, in the case of dismissal for any cause before the expiration of their time of employment, their salary was to be paid to them to the end of the term in full, then such action on the part of Broadnax justified the company in discharging him."

The trial judge evidently thought that the strength of the defendant's case was the testimony in regard to Broadnax's lack of financial integrity, general lack of service in the defendant's work, which included the failure to make personal inspections, and the testimony in regard to the enhancing the cost of the work. He did not follow the defendant's itemized requests, but charged the jury generally and in substance that the defendant was not limited in its testimony to the reasons which were given to Broadnax for his discharge when he was dismissed, but could show other and additional reasons, and, if he was making the work more expensive than it ought to be,—if he worked against the interest of his employers, not rendering his services to it fairly, but depriving it of the benefit of his services, so that it was apparent that he was not fulfilling on his part,—that he was not giving the defendant the faithful service to which it was entitled, then there was good ground for his discharge, and the verdict should be for the defendant; that Broadnax was rightfully discharged, if he was unfaithful to its interests, or if, instead of attention to the duties of his employment, he failed substantially to give his employer the benefit of his time and service. In regard to the testimony of a witness that Broadnax had 20 men on his pay roll who were doing nothing, with his approval, and that he had said, "Make it cost as much as you can," the judge charged that, if the testimony was be-

lieved, it furnished adequate cause for a prompt dismissal. He further said that the number of witnesses did not control the result, but that if the testimony satisfied the jury that Broadnax was fairly and reasonably attending to his business, doing faithfully what he had agreed to do, then the verdict should be for the plaintiff; but, if it showed that he was hostile to his employer, taking part against it, was not serving it, but was trying to make the work cost as much as he could, the verdict should be for the defendant. In regard to the point of disobedience to the defendant's orders, the charge was that he was in its employment, and should obey its reasonable directions, but that it was a subject for the consideration of the jury, in view of the magnitude of the work and its details, whether the orders in regard to the duration of the office hours, and the hours of attendance upon the outdoor work of inspection, could be exactly and literally complied with. In reply to a request to charge particularly the seventh request, the court said:

"I will leave that as I have charged,—that they are to weigh all this evidence as bearing upon the question as to his failure to attend the meetings of the chief engineer of the World's Fair and the Westinghouse Company; that is, the jury may consider if he did that purposely, without good cause. I do not turn the case on his failure to attend those meetings, but the jury may consider whatever there was to that on the question that I submit to you, as to whether he was carrying out his contract."

These were meetings called by Pierce, the chief engineer of the World's Fair, of the heads of the clerical departments, in which verbal instructions were given by Pierce to the departments how to expedite and finish up in harmony the work under way. Swallow attended them, as representing the defendant. Mr. Gallaher requested him to go. Broadnax attended but two of them, although Swallow testifies that he asked him to go, and thought that he should have gone. On June 3d, Gallaher asked Broadnax to attend a meeting to be composed of Pierce and three electrical managers and the electrical and business department of the defendant, with a view of laying out the work towards speedy completion, unless his physician forbade it. Broadnax replied that his physician did not approve of his presence at the meeting. On June 21st, Gallaher requested Broadnax and Swallow to meet Pierce and Keller, of the Westinghouse Company, that evening, at an important interview called by Pierce. Broadnax replied that it would be impossible for him to be at the meeting on account of a previous engagement, and that he was busy upon some trouble,—in the work or among the workmen, as is supposed. These two classes of meetings are those referred to in the seventh request and the sixth additional request, which was as follows:

"(6) If the jury believe that Broadnax refused to attend the meetings between the chief engineer of the World's Fair, the Westinghouse Company, and the wire company, and that such meetings were necessary for the proper carrying out of the work of the wire company, then his discharge was justified."

In our opinion, the testimony on the subject justified the refusal to place the weight upon these meetings which the defendant's counsel desired. They were circumstances to be considered in the determination of the question of the attention which Broadnax paid to his

business, and have a less important position in the record than in the argument of counsel. The facts in regard to the thirteenth request are that on or about April 10, 1893, Broadnax made contracts with Swallow and Harris in regard to their services and salary, and in each contract the clause in regard to the payment of salary was not businesslike and was too favorable to the employés. The defendant forthwith sent for Broadnax to come to New York, objected to those clauses, they were altered in accordance with the defendant's wishes, and he returned to the Fair. The court properly refused to say that if an electrical engineer made an improvident contract with his two assistants, which was corrected at the defendant's request, as soon as made, such single act, as matter of law, justified the company in discharging him from the position of its electrical engineer, but charged them that the act was to be considered upon the question of his alleged misconduct in acting against their pecuniary interest and in failing to render faithful service. An inspection of the record leads to the result that the strength of the defendant's case against Broadnax was properly estimated by the trial judge, and consisted in a general lack of attention to the defendant's business, lack in thoroughness of inspection of the work, and want of thoroughness of oversight, so that "the work grew away from him," and he became inert in the service of the defendant. We do not find that any substantial error was committed in the presentation of the defendant's side of the case to the jury. The judgment of the circuit court is affirmed, with costs.