# Batchelder *v.* Standard Plunger Elevator Company, Appellant.

*Master and servant—Wrongful discharge—Disobedience—Intoxication.*

1. Whether a master has waived a breach of contract by his servant by retaining him in service after knowledge of such breach is a question of fact. Prima facie such retention is a waiver and condonation is presumed; but if there are circumstances shown that tend to establish a reasonable and proper reason for the delay in discharging it is for the jury to say whether in fact the breach was condoned.

2. Where an employee is guilty of acts of disobedience and of being somewhat under the influence of liquor, but the employer continues him in his employment for a year and a half after the last disobedience of orders and for nearly two years from the time of the alleged intoxication, the employer will be presumed to have condoned the offenses and cannot allege them as grounds for the discharge of the employee.

3. Where an employee uses some of his own time and the time of his employer's other workmen in helping for a brief time another contractor engaged in working on the same building as the employer and his men, and it appears that the employer made no objection to such act of the employee until over a month later, a finding by a referee that such delay was a waiver of the right to discharge the employee, will not be reversed, where there is sufficient evidence to sustain the finding and there is no manifest error.

Argued Jan. 12, 1910. Appeal, No. 341, Jan. T., 1909, by defendant, from order of C. P. No. 2, Phila. Co., Dec. T., 1906, No. 640, dismissing exceptions to report of referee in case of Albert E. Batchelder v. Standard Plunger Elevator Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit to recover damages for an alleged wrongful discharge of plaintiff by defendant, his employer.

Exceptions to report of referee.

The referee, Chester N. Farr, Esq., found as follows:

### FINDINGS OF FACT.

1. That the plaintiff possessed the necessary mechanical skill and executive ability to carry out the work of employment in the office of outside foreman for which he had contracted to serve the defendant.

2. That there is no evidence that his capacity for doing work deteriorated as time went on in the service of the defendant company.

3. During the entire time that the plaintiff worked for the defendant he showed executive skill and efficiency of an order reasonably sufficient to comply with the conditions of the contract.

4. There were no inefficient acts on the part of the plaintiff that resulted in any detriment or loss to the defendant company.

5. The plaintiff employed a man named Tupper as a driller on the work on the Wanamaker building during the fall of 1904. At that time the defendant company had discharged Tupper, who had previously been working in the Pittsburg district. The plaintiff was aware of this discharge, and that the company had notified him not to re-employ Tupper; and in making this appointment the plaintiff violated the instructions given him by the company.

6. The plaintiff, while on the Wanamaker building was directed by the assistant president of the company to keep a diary of the progress of his work. This he did not do.

7. The plaintiff was asked at the commencement of the

work on the Wanamaker building to prepare a list of the tools which it would be necessary for him to have for the purpose of the elevator construction. This order he disobeyed, and he did not prepare such a list.

8. The plaintiff was on several occasions, while working upon the Wanamaker building, late in his arrival at the work, getting there at 8 o'clock instead of 7:30. On these occasions his lateness was due to the fact that he had stopped at the office of the company for other business in connection with the company's work. There were subforemen and timekeepers on the work, however, and the effect of his lateness was not to delay the commencement of the work until his arrival, it being started in his absence.

9. The plaintiff was on two occasions while on the work upon the Bellevue-Stratford Hotel, in Philadelphia, somewhat under the influence of liquor. One of these was the instance narrated by himself, when he had attended the funeral of a friend; but it does not appear that at that time he appeared at his work under the influence of liquor. The other occasion was in the evening of a working day at a test made of one of the elevators of the Bellevue-Stratford Hotel then in process of construction. On this occasion the plaintiff, while perceptibly under the influence of liquor, operated and tested the elevator for some considerable time during the evening.

10. On February 2, 1906, while the plaintiff was engaged in superintending the elevator construction of the Knickerbocker Hotel in New York City, he was requested by Spellman, the plumbing contractor for the Knickerbocker Hotel construction, to use the men and appliances of the Standard Plunger Elevator Company for the purpose of lowering into the basement of the building a pump which Spellman was to use in his work. Plaintiff used for this purpose, six men who were then in the employ of the defendant company, the work being begun at 1 o'clock in the afternoon and continued until 10 o'clock that night. Four of the men so used worked during the afternoon hours, which time would otherwise have been devoted to the defendant's service, and all six worked in the evening. The main part of the rigging, ropes and tackle used

for this purpose were the property of Spellman, the plumbing contractor. For this work the plaintiff received from Spellman the sum of $40.00, of which he used $26.00 in paying the six men who had worked under him, and retained $14.00 for himself. The plaintiff then turned into the company, for the purpose of having it recorded upon the time sheet, information which charged the company with eight hours, or a full day's work for each of the six men so employed. On the following morning the plaintiff, before he was aware that any complaint was made by the defendant company, came to the defendant's timekeeper and directed the erasure of the figures showing full time on the time sheet and the insertion of the correct figures.

11. On March 7, 1906, the plaintiff was discharged from the defendant company's employ, by a letter alleging that he had not complied with the terms of the contract, had given unsatisfactory work, and referring specifically to the Spellman incident, the facts of which have been above set forth.

### FINDINGS OF LAW.

The referee has found the plaintiff guilty of acts of disobedience as follows: The employment of Tupper, the failure to keep a diary, and the failure to prepare a list of tools. The referee, however, is of opinion that if these acts of disobedience could be regarded as sufficient to justify the rescinding of the contract by the defendant company they were waived and condoned by the long lapse of time which took place between their commission and the final dismissal. The last one of them occurring during the fall of 1904, and the plaintiff not being dismissed until one and one-half years thereafter.

Incompetency and unfitness cannot be condoned, inasmuch as they are continuing in their character: Glasgow v. Hood, 57 S. W. Repr. 162, but this does not apply to specific acts of disobedience, and in this case the waiver or condonation may be presumed by the retention in employment of the employee after the discovery of the disobedient acts. Unless there are circumstances shown which show a cause for the delay, the acts will be presumed to be condoned: Jonas v.

Field, 83 Ala. 445 (3 So. Repr. 893); Newman v. Reagan, 63 Ga. 755; Refining Co. v. Grey, 102 S. W. Repr. 934.

The referee is of the opinion that this same reasoning would apply to the findings of intoxication, for these instances occurred while at work upon the Bellevue-Stratford Hotel, which was nearly two years prior to the plaintiff's dismissal.

The action of the plaintiff on February 2, 1906, in using the defendant company's men for the purpose of lowering the pump into the basement of the Knickerbocker Hotel for the plumbing contractor, and the plaintiff's acceptance of money therefor present a more serious question. By the contract of employment, the plaintiff agreed that he "would not engage in or become interested in any other business or calling which would require his personal attendance during business hours, and would not engage in any business, calling or enterprise which is or may be contrary to the welfare, interest or benefit of the business" of the defendant. The referee does not regard the language "business or calling" as covering the work which the plaintiff did in lowering the pump, this being a single specific act, and in no sense the undertaking of any "business or calling." The remaining language above quoted includes the word "enterprise"; but a fair construction of the whole language would seem to be that it referred to some permanent occupation or employment which might be prejudicial to the interest of the defendant company, either by the plaintiff being employed in a competing business or by his employment in a business which would take away from the defendant his services for a large portion of the working hours which he should have devoted to the defendant's interests. It does not appear to the referee that any language of the contract covers a mere solitary instance of a few hours' work for the benefit of a fellow contractor. However, such an act might possibly be regarded as a breach of the contract which would justify the plaintiff's discharge, since it is scarcely conceivable that the plaintiff could, with propriety, engage in an operation of this character in which he not only gave his own services, but used the services of men in the defendant's employ, unless he had received permission to do

this from the defendant company itself.  No such permission was ever asked for.  The referee, however, is of the opinion that under the authorities above cited, the fact that the plaintiff was not discharged by the defendant until over a month later, when the plaintiff's violation of his duty had been known to him the day after its occurrence, would indicate a waiver of whatever breach the plaintiff might have committed and a condonation of the offense.  One month's delay without explanation thereof would seem to be an unreasonable time to wait before exercising the right to discharge after an offense of this character.  The insertion of it as a reason for discharge in the letters written dismissing the plaintiff, seemed to be more or less of an afterthought.

The referee therefore finds that the defendant's discharge of the plaintiff was not justified.

The referee awards to the plaintiff, the sum which he would have earned from the date of his discharge, March 6, 1906, until the end of his contract, October 1, 1907, with interest thereon to date, less the amounts which the testimony shows the plaintiff earned during the interval, together with interest on these amounts to date:

| | | |
|---|---:|---:|
| Balance due under the contract. | $4,693.00 | |
| Interest thereon to date | 642.24 | |
| Total | | $5,335.24 |
| Amount earned during 1906 | $87.50 | |
| Interest thereon to date | 14.44 | |
| Amount earned during 1907 | 737.10 | |
| Interest thereon to date | 82.93 | |
| Total | | $ 921.97 |
| Balance due | | $4,413.27 |

Which sum is awarded to the plaintiff.

*Error assigned* was order dismissing exceptions to report of referee.

*John G. Johnson*, with him *James E. Hood*, for appellant.

*Owen J. Roberts*, with him *John J. McDevitt, Jr.*, for appellee.

PER CURIAM, February 14, 1910:

Under the first four findings of fact by the referee, the appellant had no right to discharge the appellee for inefficiency.   If his acts of disobedience and his intoxication constituted causes for his discharge, they were clearly condoned by the appellant by continuing him in its employ for a year and a half after his last refusal to obey an order and for nearly two years from the time he was somewhat under the influence of liquor while at work.   If the use of the defendant's men on February 2, 1906, to assist another contractor gave the appellant the right to discharge the appellee, the learned referee has found that the right was waived and in so holding says: "The fact that the plaintiff was not discharged by the defendant until over a month later, when the plaintiff's violation of his duty had been known to them the day after its occurrence, would indicate a waiver of whatever breach the plaintiff might have committed and a condonation of the offense.   One month's delay without explanation thereof would seem to be an unreasonable time to wait before exercising the right to discharge after an offense of this character.   The insertion of it as a reason for discharge in the letters written dismissing the plaintiff, seemed to be more or less of an afterthought.   The referee therefore finds that the defendant's discharge of the plaintiff was not justified."

Whether a master has waived a breach of contract by his servant by retaining him in service after knowledge of such breach is a question of fact.   Prima facie such retention is a waiver, and condonation is presumed; but if there are circumstances shown that tend to establish a reasonable and proper reason for the delay in discharging, it is for a jury to say whether in fact the breach was condoned: Wood's Law of Master & Servant, sec. 123.   The finding of fact by the referee that the appellee's breach of duty was waived by the appellant was in effect a verdict of a jury, based upon sufficient evidence, and therefore is not to be disturbed.

The assignments of error are overruled, and the judgment is affirmed.