## Independent Life Insurance Company of America v. Williamson.

(Decided March 18, 1913.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

1. Trial—Continuance—Discretion of Court.—Whether or not a continuance shall be granted in a civil case is left largely to the discretion of the trial judge, and this discretion will not be interfered with unless it affirmatively appears it was abused.

2. Trial—Continuance—Absent Witness.—Where a continuance is asked on account of the absence of a witness, the court, where reasonable diligence has been used, should perml. the affidavit, of what the absent witness would state, to be read as a deposition.

3. Trial—Continuance—Witness Out of Jurisdiction.—Where a witness who is employed by the party asking a continuance had agreed to be present but was prevented by illness, it was error not to permit an affidavit, of what he would state, to be read as his deposition, as the employer had a reasonable right to expect his attendance.

4. Master and Servant—Discharge of Servant.—Contract giving Master Right to Determine Grounds of Discharge.—Where a contract of employment gives the master the right to be the final judge of whether or not the servant performs the conditions of the contract, if the servant commits a breach of the contract, the master will not be liable for discharging him, although the breach he was guilty of might not, in the judgment of a court or jury, be sufficient to justify a discharge. When the contract gives to the master the right to pass final judgment on the sufficiency of the breach, and the breach has been committed, the judgment of the master as to its sufficiency to justify discharge cannot be interfered with.

PAUL BLACKWOOD for appellant.

WM. McKEE DUNCAN for appellee.

Opinion of the Court by Judge Carroll—Reversing.

On June 15, 1908, the appellee, Williamson, was employed by the appellant company as manager for a term of one year at an agreed salary of $20 per week. The contract, which was in writing, stipulated among other things,

"That the company reserves the right to cancel this contract at any time for misconduct, or for the violation of any clause thereof, inattention to business, or for any,

infraction of the rules of the company, as to all of which the company shall be the final judge.''

On September 17, 1908, the company, through H. G. O'Kain, superintendent of its agencies, wrote Williamson the following letter of discharge:

''The company has decided to reduce its assistancy force to two assistants, and has decided to retain assistants Hopkins and Pope. You will, therefore, tender me your resignation, to take effect Saturday, 19, 1908. If you care to continue with us in the capacity of an agent, I would be glad if 'you would take the matter up with our superintendent, Robinson, and would be glad to talk the matter over with you.''

In 1911, Williamson brought this suit against the company to recover damages for its alleged breach of contract in discharging him before the expiration of the year for which he was employed.

For answer to his petition the company, after controverting the affirmative matter, averred that it discharged him because he did not obey directions given to him by the company as to the conduct of the business, and neglected his business, and drank intoxicating liquors to excess. It further pleaded and relied on the clause in the contract before mentioned, giving it the right to be the final judge as to whether or not Williamson fulfilled all the conditions in the contract, and averred that it discharged him because he did not. It further averred that under the contract it was the sole judge of his compliance with the conditions of the contract, and had the right to discharge him at any time if, in its judgment, he did not observe the terms of the contract.

When the case came on for trial on April 4, 1912, the company asked for a continuance on account of the absence of H. C. Crampton. In the affidavits of its attorney, Blackwood, and general superintendent, O'Kain, it was set out that Crampton, during the time of Williamson's employment, was superintendent of agencies in Louisville, where Williamson worked, and was superior to him in authority; but that he had been transferred from Louisville to Memphis, Tenn., where he was engaged in the service of the company; that subsequent to January 6, 1912, at which time the case was set down for trial on April 4, 1912, it had made arrangements with Crampton to have him present as a witness, and that it did not know he could not attend until March 29, when

he advised the company that on account of the expected illness of his wife, he could not with safety or with propriety leave Memphis and attend the trial. That when it received this information it was too late to take his deposition to be read on the trial. It filed with these affidavits the affidavit of a physician in Memphis, who said that Crampton could not safely leave home on account of the contemplated illness of his wife.

It was further set out in the affidavit of O'Kain that Crampton would testify that "he was superintendent of defendant's industrial office in the city of Louisville, and had supervision over all the agents of that department in the city of Louisville, including Williamson; that it was his duty to report weekly to the manager of said department, H. G. O'Kain, at Nashville, Tenn., as to the work done at the Louisville branch and the general business written by the agents and the conduct and discipline of the office and agents, and that he made these reports as required; that the plaintiff, Williamson, was a drinking man and frequently indulged too freely in the use of intoxicating liquors. * * * That the general character of business written by Williamson's department was bad and of the class that this defendant did not care to write or carry and that the business as a class which was procured by him and his agents was not satisfactory to the defendant. That said Crampton reported these facts to the manager, O'Kain, and plaintiff's dismissal followed."

The trial court overruled the motion for a continuance, refused to permit the affidavit to be read as the deposition of Crampton, and required the company to go into a trial, which resulted in a verdict in favor of Williamson for $644. From the judgment on this verdict this appeal is prosecuted.

A number of reasons are assigned why a new trial should be ordered, but it only seems necessary to notice two of them; one relating to the failure to grant a continuance or permit the affidavit to be read as the deposition of the absent witness, and the other to the instructions.

The subject of continuances in civil cases is treated in section 315 of the Civil Code, reading as follows:

"A motion to postpone a trial on account of the absence of evidence can be made only upon affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it;

and, if it be for an absent witness, the affidavit must show what facts the affiant believes the witness will prove, and not merely the effect of such facts in evidence; and that the affiant believes them to be true. If, thereupon, the adverse party will consent that, on the trial, the affidavit shall be read as the deposition of the absent witness, the trial shall not be postponed on account of his absence."

It will be observed that under this section the matter of granting continuances is left largely in the discretion of the trial judge. The reasons for this are so obvious that it is hardly worth while to state them, and we have written in many cases that this discretion will not be interfered with unless it affirmatively appears that it was prejudicial error. Madisonville, Hartford & Eastern Railroad Co. v. W. M. Allen, 152 Ky., 706.

It is further apparent that there is quite a difference between refusing a continuance and also refusing to let the affidavit be read as the deposition of the absent witness, and refusing to continue but permitting the affidavit to be so read. It might not be error to refuse a continuance if the affidavit was permitted to be read as the deposition of the absent witness, when it would be error to refuse to permit the affidavit to be read as a deposition and also refuse a continuance. Generally a party has little just ground for complaint if he is permited to read as a deposition what his witness would testify to if present in person, although his motion for a continuance is overruled, and especially is this true when the attendance of the witness cannot be enforced by the processes of the court and his evidence in the form of a deposition is all that the party has a right to expect.

In this case we think the error committed by the court was in refusing to let the affidavit be read as the deposition of the absent witness, and not in refusing to grant a continuance. It is true the witness was not within the jurisdiction of the court, but he was an employe of the company and, as the affidavits showed, had agreed to be present and would have been except for the expected illness of his wife. The fact too that the absent witness was an employe of the company and under its control is entitled to considerable weight in determining whether it could or not reasonably depend on his personal attendance as a witness. A party might reasonably expect to have a person in his employment present as a witness, and the

right to rely on his promise to attend, when he would not have the right to rely on the promise of a stranger.

The evidence of this witness was very material for the company. Indeed, its entire defense depended on the weight the jury might attach to his evidence. He was directly in charge of appellee during the whole time he worked for the company, and it was through him that O'Kain, the general superintendent, received reports of the manner in which appellee was conducting himself in the performance of his duties. Personally O'Kain knew little or nothing about the matter, and his conclusions were based on reports he received from Crampton, the absent witness; but the court refused to permit O'Kain to relate the information he received from Crampton, and as a result, the company was deprived of the only evidence upon which it rested its defense.

It is true that in the letter of dismissal O'Kain said he discharged appellee because the company had decided to reduce its force, and did not assign as a reason for the discharge the fact that appellee was not fulfilling his contract. But the company was not precluded by the reason assigned in this letter from showing that appellee was discharged because he failed to perform his duties in the manner stipulated in the contract, or because his habits and conduct were objectionable.

With the letter of discharge and the other evidence it was avowed Crampton would give before them it would be for the jury to say, under proper instruction, whether appellee was discharged for some violation of his contract or merely because the company had concluded to reduce its force. If appellee was discharged solely for the reason given in the letter of O'Kain, his discharge was unjustifiable and a violation by the company of the contract, but if appellee was guilty of breaches of the contract, it had the right to discharge him.

Complaint is made by counsel for the company of the instructions given by the court, but with the evidence it was avowed Crampton would give excluded, the instructions are not open to criticism, because there was no evidence that appellee had committed any breach of his contract. If, however, the evidence it was averred Crampton would give had been permitted to go to the jury, or if on another trial this evidence is heard by the jury, the instructions given on the last trial would not correctly submit the law of the case.

It will be observed that the company in the contract reserved the right to cancel it at any time for the reasons stated in the clause of the contract heretofore quoted, and that the company was to be the final judge of the question whether or not appellee committed a breach of the conditions authorizing it to cancel the contract. The contract, however, did not give the company the right to cancel it unless it appeared that appellee committed some breach of its conditions. In other words, unless appellee violated the contract, the company could not discharge him, but if he did violate it, the quantity and character of his misdoing was left entirely to it. When it showed a violation of the contract, its right to exercise the privilege given to it by the contract became final and conclusive, and it could not be made liable for an error of judgment in asserting the right of cancellation, although it might appear to a court or jury that the breach appellee was guilty of was not sufficient to justify his discharge. Appellee consented that the company should be the judge of whether or not he violated the contract, and agreed to leave it to it to finally determine whether or not the extent of his violation was sufficient to warrant his discharge, and this privilege the company cannot be deprived of or denied the right to exercise in good faith merely because a court or jury might not think the violation of sufficient importance to justify his discharge. Bridgeford & Co. v. Meagher, 144 Ky., 479; Thomas v. Houston, Stanwood & Gamble, 146 Ky., 156, 37 L. R. A. (n. s.) 950; Corgan v. George F. Lee Coal Co., 218 Pa., St.,386,11 Ann.Cases,838; Beissel v.Vermillion Farmers Elevator Co., 102 Minn., 229, 12 L. R. A. (n. s.) 403; Mackenzie v. Minis, 132 Ga., 323, 23 L. R. A. (n. s.) 1003, 9 Cyc, secs. 618-624.

The rights of the parties in respect to the matter under consideration are fixed by the contract, and if on another trial there is evidence in behalf of the company tending to show that appellee committed a breach of his contract and was in good faith discharged for misconduct or violation of the contract or inattention to business or for any infraction of the rules of the company, the jury should be instructed in substance that if he violated any of these conditions of the contract and was in good faith discharged therefor, the company was the final judge of the quantity and character of his misdoing, and they should find for it, although they might believe the miscon-

duct or inattention or violations or infractions were not sufficient to justify his discharge; but unless he was guilty of some violation of the contract the company had no right to discharge him.

The judgment is reversed, with directions for a new trial in conformity with this opinion.