was received by the defendant. That it was not transmitted to defendant in the precise manner stipulated in the bond is immaterial.

The judgment appealed from must be reversed, and a new trial granted, with costs to appellant to abide the event.

INGRAHAM, P. J., and LAUGHLIN, J., concur.

McLAUGHLIN, J. (dissenting). In case of the principal's default, the bond expressly provided that notice thereof was to be given to the surety company within 48 hours after knowledge came to the owner. It also provided the place where and the manner in which such notice was to be given. It was to be by registered letter mailed to the surety company at its principal office in Chicago, Ill. It was not so given within the time specified. The surety company had a right to contract when, where, and in what manner the notice should be given, and to hold that a notice given in a different way and at a different place is sufficient is, in effect, to make a new contract for the parties.

I am unable to concur in the opinion of Mr. Justice SCOTT that a notice given to the surety company's branch office in New York City is equivalent to a notice given in the manner provided in the contract, addressed to the general office in Chicago. I think the judgment is right, and should be affirmed, with costs.

DOWLING, J., concurs.

---

### MACAULEY v. PRESS PUB. CO.

(Supreme Court, Appellate Division, First Department. December 3, 1915.)

1. MASTER AND SERVANT ☞30—GROUNDS FOR DISCHARGE—DISOBEDIENCE OF ORDERS.

Where a newspaper cartoonist, directed to come to the office by 10 or 10:30 a. m., though remonstrated with by his immediate superior and positively ordered by the president of the company to come not later than 10:30, frequently and almost habitually violated such orders and directions by coming sometimes as late as 3 or 4 p. m., and very frequently not until after lunch, his discharge was warranted as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 30–36; Dec. Dig. ☞30.]

2. MASTER AND SERVANT ☞54—GROUNDS FOR DISCHARGE—DISOBEDIENCE OF ORDERS.

A master is entitled to direct how a servant shall perform his duties, and in so doing to consult his own convenience, as well as the interest of the business, and to prescribe such hours of work for each employé as shall in his opinion best conduce to the efficient administration of the business as a whole; and so long as such directions are not unreasonable the servant is bound to obey them, and it is no excuse for disobedience that some other method of doing the business is better than that chosen by the master, or that, notwithstanding such disobedience, the servant manages in some way to get his work done.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. ☞54.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. MASTER AND SERVANT ☞30—GROUNDS FOR DISCHARGE—DISOBEDIENCE OF ORDERS.

The sufficiency of an employé's excuses for his frequent violation of the orders of his superiors as to hours of work was for the employer to judge, and where his excuse was that he was frequently so ill as to make it impossible or inconvenient to obey such orders, it was for the employer to determine whether he would keep in his employ an employé who could not do the work in the manner in which he was required to do it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 30–36; Dec. Dig. ☞30.]

4. MASTER AND SERVANT ☞30—GROUNDS FOR DISCHARGE—DISOBEDIENCE OF ORDERS.

That an employer for a long time put up with an employé's disobedience of orders as to his hours of work, did not prevent the employer from discharging him for such dereliction of duty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 30–36; Dec. Dig. ☞30.]

5. MASTER AND SERVANT ☞32—GROUNDS FOR DISCHARGE—DISOBEDIENCE OF ORDERS.

Where an employé's disregard of orders as to his hours of work justified his discharge, it was immaterial that he was discharged on account of a matter unconnected with such disobedience of orders.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 38; Dec. Dig. ☞32.]

Appeal from Trial Term, New York County.

Action by Charles R. Macauley against the Press Publishing Company. From a judgment entered upon a verdict, and from an order denying a new trial, defendant appeals. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

Howard Taylor, of New York City, for appellant.
George Edwin Joseph, of New York City, for respondent.

SCOTT, J. This is an action by a servant against his master for damages for an unlawful discharge.

[1] Plaintiff is a professional cartoonist, and was in the employment of defendant for a number of years; his salary having been increased from time to time until at the end it had grown to $250 a week. He was employed under a written contract which by its terms would have expired on January 1, 1915. He was discharged on January 17, 1914, and the judgment appealed from awards him as damages practically the entire salary for the unexpired term of his contract, less some small sums that it appeared he had earned during that period.

The defendant is the publisher of a morning newspaper in the city of New York known as "The World." The cartoons which plaintiff was employed to draw were exhibited on the editorial page of the newspaper and constituted in effect graphic editorials. They were designed to emphasize some editorial comment or some item of news which appeared to those in charge of the policy of the newspaper to call for special emphasis. The selection of a subject and the form which the cartoon should take was necessarily subject to the suggestion, criticism,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and approval of those so responsible for the policy of the newspaper, and particularly of the head of its editorial staff. Plaintiff's immediate superior was one Frank I. Cobb, who was the editor in charge of the editorial page of the newspaper. His ultimate superior was Mr. Ralph Pulitzer, the president of the defendant.

It was explained on the trial by Mr. Cobb that in his opinion as the editor in charge of the editorial page, and consequently vested with supervision over the members of the editorial staff, of which plaintiff was one, those whose duty it was to contribute to the make-up of the editorial page should arrive at the editorial office at a reasonable hour in the morning, say from 10 to half past 10, so as to be readily available for consultation and direction as to the subjects they were to treat and the manner of treatment. This was as important, in the opinion of Mr. Cobb, so far as plaintiff was concerned, as it was for any other member of the editorial staff, for it sometimes took a long while, and sometimes a shorter, to determine upon the subject to be treated graphically and the form which that treatment should take. After a design had been agreed upon it was plaintiff's duty to sketch it in pencil and submit the sketch to Mr. Cobb for approval. After the sketch had finally been approved, it was plaintiff's duty to draw the cartoon and again submit it to Mr. Cobb for final approval. It was testified to by Mr. Cobb that in his opinion, and for reasons which he stated at length, it was desirable, for the benefit of the general work of the office, that the cartoon should be completed and out of the way as soon as possible. It was provided in the contract of employment that plaintiff "shall and will carry out the directions of the Press Publishing Company, or its executive officers, in the discharge of his duties," which, indeed, expresses no more than the duty which the law imposes upon every employé. Jerome v. Queen City Cycle Co., 163 N. Y. 351, 57 N. E. 485.

It appears from the evidence adduced by defendant that during the year 1913 plaintiff fell into the habit of coming to the office of defendant very late in the day, sometimes so late as 3 or 4 o'clock in the afternoon, and very frequently not until after lunch. Mr. Cobb frequently remonstrated with him, and insisted that he should be more regular in his attendance. To these remonstrances, which perhaps never amounted to a definite order, plaintiff was unresponsive, so that finally Mr. Cobb appealed to the president of the company, Mr. Pulitzer, to take action. This resulted, in November, 1913, in a positive order from Mr. Pulitzer that plaintiff should come to the office not later than half past 10 in the morning, and remain until his cartoon for the day had been completed and approved by Mr. Cobb. The defendant's witnesses testify that for a brief period plaintiff complied with this order, but soon relapsed into his former habit of irregular attendance at the office.

All this is but partially denied by plaintiff when testifying in his own behalf. He did not deny that Mr. Cobb frequently remonstrated with him about his irregular hours of attendance. The most he would say on this subject was that Mr. Cobb did not "continuously" request him to get to the office in the forenoon, which doubtless was literally true,

and that Mr. Cobb never gave him a positive order to be at the office at any particular time. He admits that after receiving the positive order from Mr. Pulitzer he did not always comply with it, and would not even say that he complied with it half the time, but says in a general way that whenever he was later than half past 10 the fact was due to illness. Upon this state of facts we do not consider that any case was presented for submission to the jury, and the motion for the direction of a verdict in favor of defendant should have been granted.

[2] The law is that a master is entitled to direct how a servant shall perform his duties, and in so doing he is entitled to consult his own convenience, as well as the interest of the business, and to prescribe such hours of work for each employé as shall, in his opinion, best conduce to the efficient administration of the business as a whole. So long as such directions are not unreasonable (and there can be no claim of unreasonableness here), the servant is bound to obey them, and it is no answer to a charge of disobedience for a servant to say that some other method of doing the business was better than that which the master chose, or that, notwithstanding the disobedience of instructions, he (the servant) managed in his own way to get the work done somehow. A leading case in this state is Jerome v. Queen City Cycle Co., 163 N. Y. 351, 57 N. E. 485. In that case the Court of Appeals said:

"The relation of master and servant, which existed between the parties, cast certain duties upon the plaintiff that he was bound to discharge, and the foremost was that of obedience to all reasonable orders of the defendant not inconsistent with the contract. Disobedience of such orders is a violation of law which justifies the rescission of the contract by the master and the discharge of the servant. * * * The construction of the contract is for the court exclusively. The plaintiff expressly agreed 'to give his services' to the defendant and to 'devote his best efforts in the faithful and efficient discharge of the duties of superintendent.' He impliedly agreed to devote his time to the work of his employer during business hours, unless he was sick, or some other emergency arose to justify his absence. The defendant, in making the contract, did not abdicate its position as master nor waive control of its business. The plaintiff was, in law, a servant, although of a high grade, with full control and discretion as to hiring and dismissing all the other servantr. In other respects he was subject to the reasonable orders of his master, for there was nothing in the contract to relieve him from the duty of obedience required by law. He had charge of an extensive manufactory where 600 men were at work. The defendant had the right to manage its own business, and to decide whether the services of the plaintiff were necessary at the factory on the day in question. It did so decide, and he had no power to overrule the decision, for that would make the master and servant change places. * * * The excuse given by him to justify his disobedience of orders presented no question of fact for the jury, for the law does not permit a servant to defy his master, unless serious injury threatens him, his family, or his estate. Courts will not permit juries to guess or speculate, when, from the undisputed evidence, it is apparent that the order of the master was reasonable and that the servant was guilty of insubordination. * * * The absence, considering the nature of the business and the character of the duties, was not within the contemplation of the contract and was inconsistent with the object of the servant's engagement, which was to advance the master's interest. Whether it resulted in actual injury to the business of the defendant is not the question, for it had that tendency. * * * It was a violation of duty as matter of law, which justified the master in discharging. * * * The contract and the undisputed evidence conclusively established the right of the master to discharge, and the motion to direct a verdict for the defendant should have been granted."

In Costet v. Jeantet, 108 App. Div. 201, 95 N. Y. Supp. 638, the dereliction of duty attributed to the plaintiff was, as in the present case, that he had refused to obey an order as to the hours of attendance at his employer's place of business. This court said:

"Where an order is given to an employé, and he disobeys it, his employer having an undoubted right to direct the times and manner in which service shall be performed, provided there is no specific agreement with relation thereto, the right of the employer to discharge for such disobedience follows necessarily. If this were not so, as was well said in the case of Jerome v. Queen City Cycle Co., the position of employer and employé would be reversed. The defendants had the right to control their own business, to give proper directions to their employés with respect to the time of their attendance. * * * We think the learned judge in this case should have charged the jury that the direction given by the defendants to the plaintiff that he should attend at a certain hour in the morning was a reasonable requirement, and if they found as a matter of fact that the plaintiff had disobeyed such requirement or direction his discharge was justified."

[3] In the principal case there is virtually no denial by defendant of his frequent violation of the directions of those entitled to direct him. His only attempt is to lessen the extent of his disobedience, and to offer excuses for disobeying. The sufficiency of those excuses was for the master to judge. If the excuse was that plaintiff was frequently so ill as to make it impossible or inconvenient to obey the rules of conduct that had been laid down for him, it was for the master to determine whether he would keep in his employ a servant who could not do his work in the manner in which he was required to do it.

[4] It is of no importance that the master put up for a long time with the servant's dereliction of duty. As was said in Gray v. Shepard, 147 N. Y. 179, 41 N. E. 500:

"The claim that the defendant, by retaining the plaintiff in his employment after knowledge of violations of duty, thereby condoned these offenses, and that they could not thereafter be used as grounds for discharge, is without force in view of the fact that his violations were committed from time to time, continuing until the discharge. The master may overlook breaches of duty in the servant, hoping for reformation; but if he is disappointed, and the servant continues his course of unfaithfulness, he may act, in view of his whole course of conduct, in determining whether the contract of employment should be terminated."

[5] Nor is it relevant to urge that what finally exhausted the master's patience and was the immediate precursor of the discharge was a matter unconnected with the disobedience or any question of hours of attendance. A similar claim in behalf of an employé was considered in Getty v. Williams Silver Co., 162 App. Div. 513, 147 N. Y. Supp. 1083, in which this court said:

"The plaintiff claims, and introduced evidence which he considers supports his claim, that his negligence was not the real reason for his discharge, but that defendant had determined, before the loss of the silver occurred, to discharge him unless he would consent to a reduction in his compensation. * * * All this, however, is quite unimportant and immaterial, if there was, as we consider there clearly was, a sufficient reason for the discharge, even though that was not the reason assigned by defendant, or the reason which really actuated it, or even if the sufficient cause was not known to defendant when plaintiff was discharged."

Since upon the evidence in this case, taking the view most favorable to plaintiff, it clearly appeared that he had frequently and almost habitually violated the orders given to him as to his hours of attendance at the defendant's office, the right of the master to discharge him was established as matter of law. There was therefore no question to be submitted to the jury.

The judgment and order appealed from must be reversed, and the complaint dismissed, with costs to appellant in this court and the court below. Order filed. All concur.