### In re NAGEL.

### NAGEL v. KRAUS.

(Circuit Court of Appeals, Second Circuit. December 14, 1921.)

No. 185.

1. **Bankruptcy ⟐440—Order reversing order expunging claim reviewable by petition to revise.**

An order of the District Court, reversing an order of the referee, expunging a claim against a bankrupt, is reviewable on petition to revise, under Bankruptcy Act, § 24b (Comp. St. § 9608), as a proceeding in bankruptcy, and not by appeal, under section 24a, as a controversy arising in a bankruptcy proceeding.

2. **Bankruptcy ⟐446—Only questions of law reviewable on petition to revise.**

Bankruptcy Act, § 24a (Comp. St. § 9608), authorizing the Circuit Courts of Appeals to superintend and revise in matters of law proceedings of inferior courts of bankruptcy, does not contemplate any review of

the facts by the appellate court, and only questions of law decided by the court below can be brought up for revision.

**3. Master and servant ⬅➡30(1)—Motive for discharge immaterial.**

The motives which actuate an employer in discharging an employee are wholly immaterial, if a legal ground exists for the discharge.

**4. Master and servant ⬅➡32—Cause for discharge need not be assigned.**

It is not necessary that an employer should assign a reason for the discharge of an employee, and if at the time of the discharge he assigns a reason, he is not thereby precluded from afterwards relying on a different reason, whether known to him at the time of the discharge or not.

**5. Master and servant ⬅➡30(1)—Arbitrary discharge unauthorized.**

Unless a contract of employment is subject to termination at will, the employer cannot arbitrarily discharge the employee.

**6. Master and servant ⬅➡30(4)—Misconduct ground for discharge.**

Any misconduct inconsistent with the relation of employer and employee, or which is prejudicial or likely to be prejudicial to the interests of the employer, is good ground for an employee's discharge.

**7. Master and servant ⬅➡30(4)—Inducing coemployee to leave ground for discharge.**

For an employee to attempt to induce a coemployee to leave the employer's service to set up a rival business was such a violation of his duty as warranted his immediate discharge.

**8. Master and servant ⬅➡30(7)—Misconduct condoned by delay in discharge.**

The failure of an employer to discharge an employee for about three weeks after learning of his attempt to entice a coemployee to leave the service to set up a rival business was prima facie a condonation of such misconduct, and in the absence of any explanation of the delay was conclusive evidence that the misconduct had been condoned.

**9. Master and servant ⬅➡30(7)—Misconduct condoned not ground for discharge.**

An employer, having once condoned an employee's misconduct, could not thereafter rely on it as ground for discharge; the offense not having been repeated.

**10. Bankruptcy ⬅➡446—Statements of District Judge held findings of fact, that could not be disregarded on petition to revise.**

Statements of the District Judge in his opinion that there was no evidence that an employee's tardiness continued after the employer complained of it, and that none of the other alleged defaults continued after that time, must be regarded as findings of fact, which the Circuit Court of Appeals cannot disregard on a petition to revise, though it might not be able to agree with the finding, if at liberty to examine the facts.

**11. Bankruptcy ⬅➡446—Finding that tardiness was not ground of employee's discharge not reviewable on petition to revise.**

A finding of the bankruptcy court that an employee's tardiness was not the ground for his discharge is a finding of fact, which the Circuit Court of Appeals is not at liberty to review on a petition to revise.

Appeal from the District Court of the United States for the Southern District of New York.

Proceeding on objections filed by Isidor Nagel, alleged bankrupt, to the claim of Walter Kraus. An order expunging the claim was reversed by the District Court, and the bankrupt appeals. Affirmed.

Archibald Palmer, of New York City (C. Deward Benoit, of New York City, of counsel), for appellant.

Arthur C. Kahn, of New York City, for appellee.

---

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. [1, 2] The question involved arises in a "proceeding in bankruptcy," within section 24b (Comp. St. § 9608), and so is to be disposed of upon a petition to revise, not being a "controversy arising in a bankruptcy proceeding," under section 24a (section 9608), which could be brought here only upon an appeal; and it is of course well settled that in the case of a petition for revision, as the statute confers jurisdiction "to superintend and revise in matters of law," it does not contemplate any review of the facts by the appellate court, and only questions of law decided by the court below can be brought up for revision in this mode. It will be necessary, however, to set forth the facts, in order to ascertain whether the District Court fell into any error of law in the rule of law which it applied to the facts which were found to exist.

The following facts found by the referee are herein incorporated:

"On May 26, 1920, the claimant Kraus made a written contract with the alleged bankrupt. This contract, among other things, provided that the claimant was to receive a weekly salary of $100 and 15 per cent. of the net profits of the business, and that 'irrespective of the profits earned by the said manufacturer' (the alleged bankrupt), 'the manufacturer guarantees to the salesman' (the claimant) 'that in no event will the salesman's share of the said profits be less than thirty-five hundred ($3,500) dollars,' the contract running for the period of one year from June 1, 1920.

"The second paragraph of the agreement is as follows: 'Second. The salesman will assist Nagel in the purchase and sale of such goods, wares, and merchandise which the manufacturer shall require in connection with the cloak and suit department to be operated by the said manufacturer, and the salesman will render any service which may be required of him in connection therewith, which service shall be under the direction, supervision, and control of the said manufacturer. The duties of said salesman shall likewise consist in the selling of goods, wares, and merchandise of the manufacturer in the showroom, not only of the cloak and suit department, but also other departments of the said manufacturer, and the salesman will in addition thereto travel as salesman for the manufacturer at such times and at such places as he may be directed by the manufacturer from time to time. The expenses for such traveling on the road to be paid, however, by the said manufacturer.'

"The fourth paragraph of said agreement provides as follows: 'Fourth: The salesman agrees to devote his entire time and attention for, on behalf, and in the interest of the manufacturer, and will not represent any other person, firm, or corporation during the term of this agreement, directly or indirectly, and will give to the manufacturer his sole and exclusive service.'

"The claimant entered into and continued in the employment of the alleged bankrupt under this agreement until November 20, 1920, when Nagel paid the $100 salary for the week ending November 20, 1920, when the claimant was discharged by Nagel. Upon the occasion of his discharge, Nagel told the claimant, 'I know that you have been doing things that undermine my business.'

"The claim filed is as follows: 'Weekly salary at $100 a week from November 20, 1920, to May 28, 1921, 27 weeks, $2,700; weekly salary at the rate of $100 a week from May 28, 1921, to May 31, 1921, three days, $42.84; profits guaranteed, $3,500; whole amount of claim, $6,242.84.'

"The evidence shows that, some three or four weeks before his discharge, Kraus asked Knoll, another employee of Mr. Nagel, whether he would like to go in business with him (Kraus). This employee told Kraus, 'Yes, but he hadn't any money; that his money was with Mr. Nagel, $2,500 as a deposit.' Mr. Kraus then said, 'That's nothing, the money I can get you out.'

Kraus proposed to this employee that he should put this money into a partner-ship with him. Kraus said he would 'put in money and the profits would be divided fifty-fifty.' About two or three days after this, and before the dis-charge, this employee told Mr. Nagel what Kraus had proposed to him.

"The evidence shows that Kraus, on the Monday following the Saturday when he was discharged, reported at Nagel's place of business, and Nagel asked him 'What are you doing here?' and Kraus said he came to work. 'I said, you know I discharged you, and I had good cause to discharge you; you tried to undermine my business, and you wanted to go in business with Knoll, and even promised to get his money.' Nagel further said that Kraus 'went out and bought a lot of goods that you wanted me to take in from Weinstein, that I gave you no authority to buy.' Kraus then said, 'I am the manager here; I can go out and buy goods whenever I like, and we need goods next month, and I need a lot of goods to sell; I can't stand around here and not sell any goods.'

"In view of the agreement made by Kraus that he would assist Nagel in the purchase and the sale of such goods, wares, and merchandise as Nagel should require, and would 'render any service which may be required of him in con-nection therewith, which service shall be under the direction, supervision, and control of the said manufacturer,' and that Kraus further covenanted that he would 'devote his entire time and attention for, on behalf, and in the interest of the manufacturer' (that is, Nagel), 'and will not represent any other person, firm, or corporation during the term of this agreement, directly or indirectly, and will give to the manufacturer his sole and exclusive service,' I have come to the conclusion that there was sufficient cause in the conduct of Kraus to justify his discharge.

"I therefore find that he was discharged for cause, and, as he was paid up to the date of his discharge in full for his salary, I think he has no further claim against Nagel. An order expunging the claim of Walter Kraus may be entered accordingly."

An order was thereupon entered, directing that the claim of Kraus against the bankrupt in the sum of $6,242.82 be in all respects ex-punged and stricken from the records; and the creditor, feeling ag-grieved by the order and believing it erroneous, filed his petition pray-ing that the order might be reviewed. In his petition he set forth that (a) the findings of conclusion of the referee, as stated in his opinion, are contrary to and against the evidence and against the weight of evi-dence; (b) that the evidence of the alleged bankrupt, if true, was in-sufficient in law to justify a discharge; (c) that the evidence of the al-leged bankrupt, claimed to justify the discharge, did not disclose such a systematic course of conduct for a definite period of time prior to the discharge as would justify petitioner's discharge.

The District Judge states in his opinion that he agrees with all the findings of the referee except one. That one is the statement made by the referee that Knoll told Nagel of Kraus' talk with him two or three weeks after it occurred. "In fact," says the District Judge, "he told him about three weeks before November 20th, the day of the dis-charge." He continues:

"I agree that Kraus' approaches to Knoll were certainly intended for action before their contracts expired, and were a just ground for discharge. There-fore the only question is whether Nagel's inaction for three weeks was con-duct from which condonation should be inferred. * * * Therefore the question is whether an employer, knowing that his employee has tried to wrest away other employees and to set up a rival business, in breach of his own contract of service, may wait for three weeks before discharging him."

Then the District Judge held that, as there was no explanation given for the delay, Nagel—

"was not entitled to wait so long and the discharge was not justified. It is possible that Nagel seized upon these faults, because he found himself drifting into financial embarrassment and wished to retrench; but, whatever his motive, the fact is that by his conduct he has condoned the fault, and also the earlier faults."

[3, 4] We may observe that the remark as to the possible motive of Nagel is quite immaterial and irrelevant. The motives which actuate the employer in discharging his employee are wholly immaterial, if a legal ground exists for the discharge. Von Heyne v. Tompkins, 89 Minn. 77, 93 N. W. 901, 5 L. R. A. (N. S.) 524; Crescent Horse Shoe, etc., Co. v. Eynon, 95 Va. 151, 27 S. E. 935. It is not necessary that he should assign a reason for the discharge. Mercer v. Whall, 5 A. B. 447; Ridgway v. Hungerford, 3 A. & E. 171; Strauss v. Meertieff, 64 Ala. 229, 38 Am. Rep. 8; Orr v. Ward, 73 Ill. 318. And if at the time of the discharge he assigns a reason, he is not thereby precluded from afterwards relying upon a different reason, whether known to him at the time of the discharge or not. The real question is whether a good and sufficient reason existed at the time. Carpenter Steel Co. v. Norcross, 204 Fed. 537. 123 C. C. A. 63, Ann. Cas. 1916A, 1035: Park v. Bushnell, 60 Fed. 583, 9 C. C. A. 138; Allen v. Aylesworth, 58 N. J. Eq. 349, 44 Atl. 178; Abendpost Co. v. Hertel, 67 Ill. App. 501; Arkush v. Hanan, 60 Hun, 518, 15 N. Y. Supp. 219; Insurance Co. v. Williamson, 152 Ky. 818, 154 S. W. 409; Getty v. Silver Co., 162 App. Div. 513, 516, 147 N. Y. Supp. 1083; Macauley v. Publishing Co., 170 App. Div. 640, 155 N. Y. Supp. 1044; Thomas v. Manufacturing Co., 157 Wis. 427, 147 N. W. 364, Ann. Cas. 1916A, 1020.

[5-7] Unless the contract of employment is one which can be terminated at will, the employer cannot arbitrarily discharge his employee. New York Insulated Wire Co. v. Broadnax, 107 Fed. 634, 46 C. C. A. 518. Any misconduct, however, which is inconsistent with the relation of employer and employee, will justify the former in terminating the relationship. Darst v. Matthieson Alkali Works (C. C.) 81 Fed. 284; Singer v. McCormick, 4 Watts & S. (Pa.) 265; Frederich v. Ralli, 11 La. Ann. 425; Darden v. Nolan, 4 La. Ann. 374; Beckman v. Garrett, 66 Ohio St. 136, 64 N. E. 62. And dismissal is warranted by any act of the employee which is prejudicial, or likely to be prejudicial, to the interests of the employer. Pearce v. Foster, 17 Q. B. D. 542; Newman v. Reagan, 63 Ga. 512; Vinson v. Kelly, 99 Ga. 270, 25 S. E. 630; Adams Express Co. v. Trego, 35 Md. 47. If the employee does any act which is inconsistent with the duties and obligations arising out of and incident to the relation, it is good ground for his discharge. Singer v. McCormick, supra. The nature of the relation imports trust and confidence, and its evident purpose is the advancement of the master's interests, and if the trust is violated, and the employee intentionally does anything detrimental to the employer's interests, it is such a breach of the contract as justifies his immediate discharge. Mercer v. Whall, 5 Q. B. 447; Amor v. Fearon, 9

Ad. & El. 548.. That an employee attempts to induce a coemployee to leave his employer's service to set up a rival business is certainly such a violation of his duty as warrants his immediate discharge.

[8, 9] This brings us to inquire whether a delay of "about three weeks" in discharging Kraus, after learning of his conversation with Knoll, there being no explanation for the delay, amounted in law to a condonation of that particular misconduct. As we understand the rule, it is that, if an employer retains the employee in his service after he has knowledge of misconduct warranting his discharge, such retention is prima facie a waiver, and condonation is presumed, unless circumstances are shown that tend to establish a reasonable and proper reason for the delay. Batchelder v. Elevator Co., 227 Pa. 201, 207, 75 Atl. 1090, 19 Ann. Cas. 875. In Wood on Master and Servant (2d Ed.) § 123, the rule is laid down as follows:

"The question as to whether the master has waived a breach of contract by the servant, by retaining him in service after knowledge of such breach, is a question of fact for the jury. Prima facie it is a waiver, and condonation is presumed; but, if there are circumstances shown that tend to establish a reasonable or proper excuse for delay, it is for the jury to say whether in fact the breach was condoned."

In 20 Am. & Eng. Encyc. of Law, 33, the rule is stated in similar terms. It is as follows:

"The mere fact that the servant is not dismissed immediately after knowledge of the ground for discharge does not necessarily amount to a waiver of the right to discharge, but his retention under such circumstances is prima facie evidence of waiver."

We must conclude, therefore, that the District Judge correctly held that the failure of Nagel to discharge Kraus for about three weeks after learning of the attempt of Kraus to entice Knoll to leave the service of Nagel was prima facie a condonation of his misconduct in that particular, and that, as no explanation was made for this delay, we must regard the omission as conclusive evidence that Nagel had condoned that particular misconduct. Having once condoned it, he could not thereafter rely upon it. Ridgway v. Hungerford Market Company, 3 Ad. & El. 171; Jones v. Trinity Parish (C. C.) 19 Fed. 59; Daniell v. Boston, etc., Co., 184 Mass. 337, 68 N. E. 337; Leatherberry v. Odell (C. C.) 7 Fed. 641; Tickler v. Andrae Mfg. Co., 95 Wis. 352, 70 N. W. 292; Collins Ice Cream Co. v. Stephens, 189 Ill. 200, 59 N. E. 524; Jonas v. Field, 83 Ala. 445, 3 South. 893. Although, if the offense had been repeated, the principle stated would not have applied. Jerome v. Queen City Cycle Co., 163 N. Y. 351, 359, 57 N. E. 485. As respects the particular misconduct we have been considering, it was not claimed that there was any repetition of it.

[10, 11] The bankrupt relied, however, upon two other grounds of alleged misconduct. One of them was the tardiness of Kraus in reporting for business at the office. The referee, however, has made no findings of law or fact upon that phase of the subject. The District Judge in his opinion alludes to the matter as follows:

"Kraus' tardiness may indeed have continued, but there is no evidence that it did, and it is pretty clear that this was not in fact the ground of the discharge."

This is the only reference he has made concerning it. The statement that there is no evidence in the record that the tardiness continued after Nagel complained of it to Kraus we must regard as a finding of fact, and as such, on a petition to revise, we cannot disregard it, although we might not be able to agree with it, were we at liberty to examine into the facts, which we are not. We are also concluded by his finding that the tardiness was not the ground for the discharge. That also is a finding of fact, which we are not at liberty to review.

The third ground upon which Nagel relied was that Kraus went out and bought a lot of goods from one Weinstein without authority, and when he was remonstrated with said, "I am the manager here; I can go out and buy goods whenever I like," etc. The referee considered this matter, and concluded that it warranted the discharge of Kraus; but he made no finding as to the time when this misconduct occurred. The District Judge makes no reference to the subject in his opinion, except that, after saying that Nagel learned "about three weeks" before his discharge of Kraus of the conversation between Kraus and Knoll, he states that none of the alleged defaults continued after that. We must accept that as a finding of fact which we are not at liberty to review, and if it is to be so treated then it follows that that particular misconduct was also condoned.

For the reasons stated, the order of the District Judge is affirmed.