## Linda Coal and Supply Company, Appellant, *v.* Tasa Coal Company.

98

Argued October 9, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Edmund K. Trent,* with him *G. Donald Gerlach,* and *Reed, Smith, Shaw & McClay,* and *Cingolani & Cingolani,* for appellant.

*Harry K. McNamee,* with him *Marshall, Marshall, McNamee & MacFarlane,* and *Plowman and Spiegel,* for appellee.

OPINION BY MR. JUSTICE EAGEN, November 10, 1964:

This appeal is from the action of the court below sustaining preliminary objections in the nature of a demurrer to the complaint in an action of trespass. Plaintiff seeks to recover losses incurred as a result of a contract between the parties which it was allegedly induced to enter as a result of fraudulent misrepresentations by the defendant.

The facts pleaded are as follows:

The plaintiff-appellant, Linda Coal and Supply Company (Linda), contracted with the defendant, Tasa Coal Company (Tasa), in May of 1955 to strip-mine coal from lands owned by Tasa in Butler County, Pennsylvania, a portion of which had already been strip-mined by Tasa in prior years. In the process of negotiations toward the execution of this contract, Tasa exhibited to Linda various maps and drill records which substantiated its representation that the vertical cover line (overburden) did not exceed a maximum of 50 feet. This representation was false, which Tasa well knew, and was made with the fraudulent purpose of inducing Linda to enter into a contract for the removal of all recoverable coal on the tract, for which Linda was to receive from Tasa $2.95 per ton. So too, the exhibited maps and drill records falsely represented the amount of overburden, as Tasa again knew, because it had prepared the maps and drill records at a time prior to Tasa's earlier strip-

mining operations on the tract, during which operation Tasa had placed additional earth over the coal which was the subject of this contract.

Upon learning that the overburden exceeded 50 feet, and in fact averaged 60 feet, Linda entered renegotiations with Tasa and it was orally agreed that, as a result thereof, Linda would receive $3.15 per ton of coal removed for Tasa, instead of the originally contracted for $2.95 per ton.

Nonetheless, because the overburden averaged some 60 feet in depth, it remained economically impractical for Linda to remove the coal and Linda ceased the operations called for in the contract. Thereupon, Linda instituted this action of trespass for fraud and deceit to recover the actual loss which it suffered as a result of the fraudulent misrepresentations regarding, inter alia, the overburden made to it by Tasa.

The court below held, *as a matter of law*, that the renegotiation between the parties "after all the facts and true status were known to the plaintiff", and the entering into a new contract for an increased profit to the plaintiff, waived any right of action for alleged misrepresentations which were the very basis and consideration of the new contract. Further, the court below said that a mere allegation of fact that Linda did not intend to waive its rights regarding the fraudulent misrepresentations could not destroy the legal effect of its actions in renegotiation.

A waiver is the intentional relinquishment of a known right: *Brown v. Pittsburgh,* 409 Pa. 357, 186 A. 2d 399 (1962). For a waiver to exist in the instant case, it would be necessary for Linda to have had at the time of the renegotiations full knowledge of all the material facts regarding the fraudulent statements which induced the original agreement, and, with this knowledge, to have entered into the new arrangement with an intention to waive any then ex-

isting cause of action: *Browning v. Rodman,* 268 Pa. 575, 111 A. 877 (1920) ; *Miller v. Central Trust & Savings Co.,* 285 Pa. 472, 132 A. 579 (1926).

We agree with the court below that if Linda, with full knowledge of the fraud and deceit practiced upon it during the original negotiations, entered into a new agreement stipulating an increased tonnage price, it cannot now say that it did not intend to waive any then existing rights. If at that time Linda knew of the false representations and that the same were *fraudulent,* it could not renegotiate and accept a new agreement without waiving its claim upon the original fraud. Both parties being possessed of the same knowledge, the new contract would be an arm's length bargain supplanting the original, fraudulently induced one. It is fundamental that a party to a contract cannot complain that he was fraudulently induced to accept a less than fair consideration for the contract, renegotiate the consideration after discovering the fraud, and then sue upon the original inducing fraud: *Negley v. Lindsay,* 67 Pa. 217 (1871) ; 37 C.J.S. Fraud §69 (1943) ; 24 Am. Jur. Fraud and Deceit §214 (1939).

Despite the fact that intent is normally a question for the trier of facts (*Cole v. Philadelphia Co.,* 345 Pa. 315, 26 A. 2d 920 (1942), and *Priester v. Milleman,* 161 Pa. Superior Ct. 507, 55 A. 2d 540 (1947)), waiver can be determined, as a matter of law, where only one reasonable conclusion can be drawn from the undisputed facts: 37 C.J.S. Fraud §131 (1943) ; 56 Am. Jur. Waiver §23 (1947). Cf. *Hanover Construction Co. v. Fehr,* 392 Pa. 199, 139 A. 2d 656 (1958) ; *Peoples Pittsburgh Trust Co. v. Commonwealth,* 359 Pa. 622, 60 A. 2d 53 (1948) ; *Grant v. Lovekin,* 285 Pa. 257, 132 A. 342 (1926).

However, the court below fell into error in equating knowledge of the *falsity* of the representations

with knowledge of their *fraudulent* character. The basic prerequisite of an action in deceit for fraudulent misrepresentations is that the deceiver shall *knowingly* make a false statement, *intending* the actor to rely upon it to his detriment: *Jamestown Iron & Metal Co. v. Knofsky*, 302 Pa. 483, 154 A. 15 (1930); *Warren Balderston Co. v. Integrity Trust Co.*, 314 Pa. 58, 170 A. 282 (1934).

Nowhere in the allegations of the complaint does it appear that, at the time of and during the renegotiations, Linda knew, or even suspected, that the false representation as to the overburden had been made with a fraudulent purpose, to wit, to induce Linda to enter into a disadvantageous contract. In fact, it does not appear therein at what time Linda did acquire this knowledge. The court below incorrectly supplied this fact from the conclusion stated in Paragraph III of Tasa's preliminary objections.

It is fundamental that a demurrer cannot supply a fact missing in the complaint: *Bonanni v. Weston Hauling*, 392 Pa. 248, 140 A. 2d 591 (1958). ". . . [I]n passing on a demurrer a court cannot consider matters collateral to the pleading opposed but only such matters as arise out of the statement of claim or complaint itself. . . .": *Detweiler v. Hatfield Borough School District*, 376 Pa. 555, 558, 104 A. 2d 110, 113 (1954).

Nor are we persuaded that Linda's knowledge of the fraud is a compelled inference from the facts pleaded in the complaint.

The price finally agreed upon (i.e., $3.15 per ton) was still insufficient to allow economically practical strip-mining, as is evidenced by Linda's actual loss in the operation. Would it be reasonable to assume that, knowingly armed with its right of action in deceit, for which full recovery of losses would have been allowed under the original contract, Linda still

agreed to accept less than an adequate price for its services? Even if a reasonable man could so assume, would it not be equally as reasonable to assume that Linda went to Tasa, believing that it was bound by its prior contract, to try to recoup some of its loss in the hope that Tasa would recognize the mutual mistake? Either assumption being potentially valid, drawing the inferences as to whether Linda knew of the fraud and, in so knowing, intended to waive its right of action based thereon becomes a function which the court below must leave to the trier of fact: *Cole v. Philadelphia Co.*, supra, and *Priester v. Milleman*, supra. Cf. *Hanover Construction Co. v. Fehr*, supra, and *Batchelder v. Standard Plunger Elevator Co.*, 227 Pa. 201, 75 A. 1090 (1910).

The fact of Linda's knowledge of scienter and intent on the part of Tasa not having been established, it cannot be held as a matter of law that Linda waived its right of action in deceit at a point in time when Linda might not have known that the right existed.

Judgment reversed.

Mr. Chief Justice BELL dissents.