616 F.2d 83
 6 Bankr.Ct.Dec. 115
 In re METROPOLITAN INTERNATIONAL, INC., Metro Mining, Inc.;
Fran-Ru Enterprises, Inc.; MII Aviation, Inc.; and
MII Restaurant Systems, Inc., its wholly
owned subsidiaries, Debtors.
Appeal of Equibank, N.A.
 No. 79-1282.
 United States Court of Appeals,
Third Circuit.
 Submitted under Third Circuit Rule 12(6) Oct. 16, 1980.
Decided Feb. 22, 1980.
 
 1
 Robert N. Hackett, Michael E. Hill, Baskin & Sears, Pittsburgh, Pa., for appellant.
 
 
 2
 Hillard Kreimer, Christopher A. Beck, McCrady, Kreimer, Ravick & Bonistalli, and Alfred C. Maiello, Pittsburgh, Pa., for appellee.
 
 
 3
 Before GIBBONS and HIGGINBOTHAM, Circuit Judges, and WEINER, District Judge*.
 
 OPINION OF THE COURT
 
 4
 WEINER, District Judge.
 
 
 5
 In this bankruptcy case, Equibank, the appellant, seeks to overturn the order of the district court affirming the bankruptcy court's decision that the appellant waived its right of set-off, which right is provided for in Section 68 of the Bankruptcy Act, 11 U.S.C. § 108. In the alternative, the appellant seeks an order remanding the case to the bankruptcy court for a hearing on the question of whether the appellant waived its right of set-off. For the reasons to follow, we reverse the judgment of the district court.
 
 
 6
 The key date for point of reference is February 3, 1977. On that date, Metropolitan International, Inc., et al (hereinafter, MII) filed a petition for an arrangement under Chapter XI of the Bankruptcy Act. 11 U.S.C. § 701 et seq.
 
 
 7
 Prior to February 3, 1977, the following events occurred. Credit Alliance Corp. instituted an action against MII to collect approximately $364,000.00. Credit Alliance's claim against MII was reduced to judgment, and on February 1, 1977, a writ of execution was issued. At the time of these actions by Credit Alliance, MII had on deposit with Equibank approximately $52,000.00 in a checking account. On February 1, 1977, Credit Alliance garnished this account and served interrogatories upon Equibank.
 
 
 8
 Also prior to February 3, 1977, MII had borrowed funds from Equibank, which indebtedness was reduced to approximately $358,000.00 on or about February 3, 1977.
 
 
 9
 On February 9, 1977, Stanley J. Kann, II, attorney for Equibank wrote James L. Weisman, attorney for Credit Alliance, a letter stating that Equibank did not intend to attempt to exercise its rights to set-off as to the funds. Copies of this letter were forwarded to the receiver and all interested parties including officers of the bank.
 
 
 10
 On February 15, 1977, an agreement was entered into between the receiver and the appellant concerning the disposition of certain assets in which appellant had a security interest and for the assignment of certain accounts receivable of MII. The bankruptcy court approved the agreement, though no mention was made as to the $52,000.00 held in the checking account by Equibank.
 
 
 11
 On March 7, 1977, the receiver filed a complaint to secure funds. Credit Alliance and Equibank were the named defendants. The receiver sought the release of the $52,000.00 held by Equibank on the grounds that Equibank previously indicated it did not intend to exercise any set-off claim and that Credit Alliance's interest as garnisher was void because its preference was exercised within four months of the institution of the Chapter XI proceedings. On March 11, 1977, Credit Alliance filed an answer and counterclaim to the receiver's complaint. Equibank did not respond to the complaint. Subsequently, the receiver responded to Credit Alliance's counterclaim and then filed an amended complaint. Credit Alliance answered the amended complaint, but once again, Equibank failed to respond.
 
 
 12
 On April 7, 1977, a hearing on the complaint and amended complaint was held before Bankruptcy Judge Gerald K. Gibson. All parties were represented, including the appellant, which was represented by two attorneys and a loan officer. At the hearing, Mr. Kann, attorney for Equibank explained that the bank did not exercise any right that it might have had with respect to the funds, and that the bank froze the account on behalf of Credit Alliance and not on behalf of the bank's unexecuted right of set-off. Mr. Kann explained that the bank did not take the physical steps necessary to assert its right of set-off because the current status of the banking law does not permit the execution of that right after somebody else (Credit Alliance) has properly asserted its right to the funds. He further explained that the bank was a mere stakeholder and was participating at the hearing to assist the court in determining how the bank should disburse the funds in the checking account.
 
 
 13
 The April 7, 1977 hearing was continued at the request of the receiver in order to secure more financial data. On August 5, 1977, the receiver filed a petition to compromise its suit against Credit Alliance and Equibank; a hearing date was set for August 26, 1977. The agreement provided for a settlement between MII and Credit Alliance in the amount of $5,000.00, to be paid from the frozen checking account with the $47,000.00 balance paid over to the receiver.
 
 
 14
 On August 18, 1977, Equibank filed an answer to the receiver's petition to compromise, and for the first time raised its alleged right to set-off its claims against the fund. On August 26, 1977, the receiver filed a motion to strike the appellant's answer. The receiver contended that the bank waived its right of set-off, and that he relied upon that waiver when he assisted MII in fashioning a Plan of Arrangement.
 
 
 15
 Equibank's position with regard to the receiver's motion to strike was that it did not exercise its right to set-off because of erroneous legal advice, and that the receiver did not detrimentally rely on Equibank's nonaction in that the receiver did not file a Plan of Arrangement and did not request the use of the checking funds to effectuate a Plan of Arrangement. Equibank also noted that it exercised its right of set-off immediately after it was given correct legal advice.
 
 
 16
 Without a hearing on the question of whether Equibank waived its rights of set-off, the bankruptcy court granted the motion of the receiver to strike the bank's answer.
 
 
 17
 Upon appeal to the district court on the question of whether the bank waived its right of set-off, as a matter of law, that court held that a hearing was not necessary to dispose of that question, and then affirmed the bankruptcy court's order.
 
 
 18
 The appellant's primary argument is that the question of waiver must be decided by a trier of fact, not summarily, and that resolution of that question requires a determination of whether the appellant possessed the requisite intent. The bank contends that the existence of a mistake of law negatives the intent. Appellant also argues that the receiver did not detrimentally rely on the alleged waiver, and therefore, it should not be estopped from asserting the set-off.[1]
 
 
 19
 The law is settled that the set-off provided for in § 68 of The Bankruptcy Act is not automatic or self-executing. The privilege is one which must be asserted; otherwise, it is considered waived and lost. Cumberland Glass Manufacturing v. DeWitt and Co., 237 U.S. 447, 35 S.Ct. 636, 59 L.Ed. 1042 (1915).
 
 
 20
 In this case, it is undisputed that the appellant did not timely assert its right of set-off. The narrow issues presented therefore, are whether the appellant possessed the requisite intent for a valid waiver, and if so, did the receiver detrimentally rely upon the waiver, thereby estopping a recission.
 
 
 21
 Though the appellant argues that intent to waive is normally a question for the trier of facts, Cole v. Philadelphia Co., 345 Pa. 315, 26 A.2d 920 (1942), it does not dispute that waiver can be determined as a matter of law, where only one reasonable conclusion can be drawn from the undisputed facts. Linda Coal and Supply Co. v. Tasa Coal, 416 Pa. 97, 204 A.2d 451 (1964).
 
 
 22
 In this case, the facts surrounding the alleged waiver are undisputed. Repeatedly, appellant's counsel informed the receiver, Credit Alliance and the court that the appellant did not seek to exercise its right of set-off.
 
 
 23
 Appellant first expressed its position on February 9, 1977, when its counsel informed the attorney for Credit Alliance that it did not intend to attempt to exercise its right of set-off.
 
 
 24
 Appellant reiterated its position when it failed to respond to both the complaint and amended complaint filed by the receiver, against Credit Alliance and appellant, seeking to secure funds held by appellant. Moreover, at the April 7, 1977 hearing on the complaint, the appellant explained on the record that it was not exercising its right of set-off.
 
 
 25
 Thus, it is clear that the facts detailing appellant's waiver are not in dispute.
 
 
 26
 Appellant's contention that the waiver was not valid because it lacked the requisite intent is untenable. The appellant can take no solace in the fact that it acted based upon a miscomprehension of the law. When the appellant expressed its position regarding the alleged right of set-off, it did so fully cognizant of the action it was taking. The fact that it may have been misinformed regarding the current state of the law does not negate the intent it possessed at the time of its action.
 
 
 27
 Indeed, intent is evidenced by clear actions or language which is indicative of the actor's resolve. It is distinguishable from motive. In this case, though the appellant was motivated by a misunderstanding of the law, it cannot be disputed that it fully intended to waive its right of set-off.
 
 
 28
 Since only undisputed facts were presented to the bankruptcy court on the issue of waiver, we hold that it was within the judge's discretion to conclude as a matter of law that a valid waiver existed. Linda Coal and Supply Co. v. Tasa Coal, Id.
 
 
 29
 Turning next to the issue of whether the receiver detrimentally relied upon the appellant's waiver, we hold that the bankruptcy court erred in failing to hold a hearing. The appellant has argued that the receiver did not detrimentally rely on the waiver because the waiver occurred after the receiver and appellant entered into an agreement regarding the disposition of the debtor's (MII) assets in which the appellant held a security interest. The appellant also argues that the receiver has yet to file a Plan of Arrangement and has not requested the use of the checking funds to effectuate a Plan of Arrangement.
 
 
 30
 Because these arguments are based upon disputes of fact, they afford the appellant protection from a summary disposition of the issue.
 
 
 31
 Unlike the issue of waiver, where the facts were undisputed, the facts indicative of the alleged detrimental reliance are not clear. Moreover, we query whether the fact of an agreement between the receiver and the appellant regarding the disposition of the debtor's (MII) assets can give rise to a claim of detrimental reliance by the receiver. Since the appellant had a security interest in those assets, the receiver was fully aware that entering into an agreement with the appellant regarding the disposition of these assets need not affect the proposed Plan of Arrangement.
 
 
 32
 Of course, it is possible that the receiver detrimentally relied. However, that issue could not be resolved without the benefit of a hearing.
 
 
 33
 Accordingly, we reverse the judgment of the district court and remand the case for proceedings consistent with this opinion.
 
 
 
 *
 Honorable Charles R. Weiner, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 Appellant contends that it was impossible for the receiver to detrimentally rely on the alleged waiver because the agreement between itself and the receiver was informally reached on February 4, 1977, five days prior to the date of Mr. Kann's letter. Moreover, the appellant contends that the reason the formal agreement, dated February 15, 1977, is silent as to the disposition of the checking account funds is that that agreement merely formalized the February 4, 1977 agreement, and as of February 4, 1977, there had been no discussions regarding a possible set-off