Tom HOLDER, Appellant,

v.

MAACO ENTERPRISES, Appellee.

No. 80–1519.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 3, 1980.
Decided March 9, 1981.

Mark E. Herman, Baltimore, Md. (David L. Johnson, Johnson & Parker, P. A. on brief), for appellant.

Edmund P. Dandridge, Jr., Baltimore, Md. (Thomas E. Lynch, III, Venable, Ba-

etjer & Howard, Baltimore, Md., Sheldon D. Camhy, Martin E. Karlinsky, Shea & Gould, New York City, on brief), for appellee.

Before WINTER, SPROUSE and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

Tom Holder appeals the grant of summary judgment to Maaco Enterprises, Inc. (Maaco), on Holder's claim against Maaco for fraudulently inducing him to enter into a franchise agreement. The district court granted the motion after concluding that Holder had waived as a matter of law his right to sue Maaco for fraud. We reverse.

## I.

In 1974 Maaco, a Pennsylvania corporation, placed an advertisement in the Baltimore *Sun* promoting the operation of its automobile painting and repair franchises and touting the profitability of the franchises. Holder and Milton Gholston, both teachers by profession, pursued the advertisement and, relying upon Maaco's alleged skill and experience in operating franchises, entered into an agreement in October 1975 in Pennsylvania with Maaco to operate a franchise in Baltimore. The business floundered from the outset, and Holder and Gholston were constantly plagued with monetary and managerial problems. After only a month, Holder disengaged himself from the active management of the business, and, less than a year later, Holder and Gholston wrote to Maaco requesting dissolution of the original franchise agreement and creation of a new contract between Gholston and Maaco alone. · The only reason given for the requested change was the "different managing philosophies" of Holder and Gholston. Holder alleges that, at that time, he did not know that Maaco's representations concerning the profitability of the franchise were fraudulent. Maaco complied with the request and produced an "Addendum," which Holder, Gholston, and Maaco's representatives signed in November 1976, and which stated in relevant part as follows:

## ADDENDUM

This Addendum to the Franchise Agreement between MAACO ENTERPRISES, INC. and R. Thomas Holder and Milton Gholston, dated October 25, 1974, is for the following purpose:

    1. To delete R. Thomas Holder from the Franchise Agreement as a Licensee.

Any and all monetary exchange, between the Licensees on said Franchise Agreement, as a result of this Addendum has been settled by and between the Licensees and in no manner involves or effects [sic] MAACO ENTERPRISES, INC.

Gholston did in fact continue to operate the franchise under the terms and conditions of the original agreement. Business did not improve after Gholston assumed sole responsibility for it, and in September 1977 Maaco sued Gholston for sums due it under the franchise agreement. Gholston did not defend, and a judgment was entered against him for $53,236.14, with interest, which amount included costs for initial equipment.

Shortly after Maaco had filed suit against Gholston, both Gholston and Holder filed suit against Maaco,[1] claiming damages for breach of contract and for fraudulent misrepresentations on the part of Maaco which induced them to enter into the original franchise agreement. Maaco's motion for summary judgment against both Holder and Gholston was granted. In granting summary judgment against Holder, the district court held that Holder had waived as a matter of law any claim for fraud against Maaco by signing the Addendum. Only Holder has appealed the grant of summary judgment to Maaco, and he appeals only that part of the judgment concerning his claim for fraud in the inducement.

## II.

The central question this appeal raises is whether Holder, as a matter of law, waived his right to sue Maaco for fraud by signing

---

1. The suit was originally filed in district court in Michigan and was subsequently transferred by stipulation and order to Maryland, pursuant to 28 U.S.C. § 1404(b).

the Addendum, and thus whether the grant of summary judgment against him was proper.

■ Maryland law, which we turn to for guidance in this diversity action, instructs us that waiver of legal rights is a serious matter. As defined in *Bargale Industries, Inc. v. Robert Realty Co.*, 275 Md. 638, 643, 343 A.2d 529, 533 (1975), waiver is "the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances." In this case, Maaco did not request, and Holder did not volunteer, an express waiver of any cause of action for fraud. Therefore, any waiver would have to be "inferred from circumstances."

■ We have found no Maryland case that offers specific guidance on how this rule of implied waiver should operate in this case. It is clear that mere affirmance of a contract does not imply a waiver of the right to sue for fraudulent misrepresentation. *Sommers v. Dukes*, 208 Md. 386, 118 A.2d 660 (1955). Holder, however, went beyond mere affirmance of the original franchise agreement; by requesting dissolution of the original agreement and voluntarily signing the Addendum, he entered into a novation.[2] The distinction between simple affirmance of a contract and entry into a novation is one which the law recognizes, and no Maryland opinion of which we are aware analyzes the effect of a novation

on a tort action for fraud in the inducement.[3] Therefore, we look to the law of other jurisdictions for guidance, as we think Maryland's highest court would do in this situation.

We note at the outset that Pennsylvania law on waiver is virtually identical with that of Maryland, and a decision of Pennsylvania's highest court addresses precisely the issue in this case. In *Linda Coal and Supply Co. v. Tasa Coal Co.*, 416 Pa. 97, 204 A.2d 451 (1964), the court reversed a lower court's ruling that a coal company which had renegotiated a mining contract with another company for a higher price had impliedly waived its right to sue for fraud in the inducement of the original contract. In so holding, the court reasoned that waiver under Pennsylvania law is the intentional relinquishment of a known right, and that waiver could not be implied merely on the ground that the coal company had knowledge of the other party's misrepresentations when it entered into the new agreement. Rather, the coal company would have had to have known that the misrepresentations were in fact fraudulent and that it had a cause of action for fraud, in order for there to have been an implied waiver.

We have chosen to follow the well reasoned analysis of the Pennsylvania court. Under *Linda Coal*, then, whether Holder knew of the fraudulent nature of Maaco's misrepresentations and whether he knew of his right to sue Maaco for fraud at the time of the novation are critical factual issues.

2. In *I. W. Berman Properties v. Porter Brothers, Inc.*, 276 Md. 1, 7, 344 A.2d 65, 70 (1975) the Court of Appeals of Maryland defined a novation as follows:

A "novation" is a new contractual relation made with intent to extinguish a contract already in existence. It "contains four essential requisites: (1) A previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the validity of such new contract; and (4) the extinguishment of the old contract by the substitution of the new one." [citations omitted].

All four requirements for a novation have been met in this case. Holder clearly elected to affirm the original franchise agreement, as shown by his request for its dissolution and by his acknowledgment of the agreement in the Addendum. Holder, Gholston, and Maaco all signed the Addendum, thus exhibiting their

consent to a new arrangement. The Addendum, moreover, appears in all respects to be valid. Finally, the Addendum, by deleting Holder as a licensee, in effect extinguished the original agreement and substituted for it a new agreement, identical in its terms except for the deletion of Holder as a licensee.

It is of no significance under Maryland law that no new parties were added to the agreement. In Maryland new parties are not required for a novation. *Leisner v. Finnerty*, 252 Md. 558, 250 A.2d 641 (1969).

3. In *Levin v. Singer*, 227 Md. 47, 175 A.2d 423 (1961), the question of whether a novation operated as a waiver of a cause of action for fraud was raised but not resolved by the court, since it concluded that there was insufficient evidence of a novation.

■ The misrepresentations that Holder alleges Maaco made—generally, that Maaco had superior skill and experience in handling franchises and that the franchise would quickly generate large profits—were obviously known to Holder at the time he entered into the novation. What is uncertain, however, is whether he knew at that time that those misrepresentations were fraudulent. Two possible inferences arise from Holder's decision to enter the novation. One is that Holder knew of the fraudulent nature of the misrepresentations when he sought the novation. Another possible inference, however, is that Holder attributed the failure of the franchise to fulfill Maaco's promises not to fraud on Maaco's part but to his and Gholston's own business practices, and that he entered into the novation to escape the results of his own mismanagement. Either of the conflicting inferences being reasonable, it is the function of the trier of fact to determine whether Holder did or did not know of the alleged fraud when he signed the Addendum. *Linda Coal, supra.* *Accord, Bissett v. Ply-Gem Industries, Inc.,* 533 F.2d 142 (5th Cir. 1976).

■ If it is not appropriate to infer at this point that Holder had knowledge of the fraud, then it certainly cannot be inferred that he knew he had a cause of action for fraud at the time he signed the Addendum. Even if he knew of the fraud, however, it would still be for the trier of fact to determine whether he knew that he had the right to sue for fraud.[4]

4. If these factual issues concerning Holder's knowledge were resolved, then it would become appropriate to determine whether waiver should be implied as a matter of law. That inquiry in turn would require that the novation reflect a substantial concession on Maaco's part. If there were such a concession, and if Holder had entered into the novation with the requisite knowledge, then the novation would represent an informal settlement between the parties for any fraud on Maaco's part, and implying waiver as a matter of law would be proper. *See, e. g., United Forest Products Co. v. Baxter,* 452 F.2d 11 (8th Cir. 1971); *Phillips Petroleum Co. v. Rau Construction Co.,* 130 F.2d 499 (8th Cir. 1942), *cert. denied* 317 U.S. 685, 63 S.Ct. 260, 87 L.Ed. 549 (1942); *Linda Coal and Supply Co. v. Tasa Coal Co.,* 416 Pa.

These questions of Holder's knowledge of the fraud and of his right to sue Maaco for fraud pose genuine issues of material fact not yet resolved. Accordingly, we reverse the grant of summary judgment to Maaco and remand the matter to the district court for further proceedings consistent with our opinion.

REVERSED AND REMANDED.

97, 204 A.2d 451 (1964). Implying waiver under these circumstances prevents the possibility of what would in effect be a double recovery.

If, however, the novation did not reflect a substantial concession on Maaco's part and a corresponding benefit on Holder's, then implying waiver as a matter of law, would not necessarily be appropriate. *See, e. g., C & H Construction and Paving Co. v. Citizens Bank,* 93 N.M. 150, 597 P.2d 1190 (Ct.App.1979); *Weitzman v. Bergstrom,* 75 Wash.2d 693, 453 P.2d 860 (1969); *Smith v. Tracy,* 372 S.W.2d 925 (Mo.1963). Because we find the grant of summary judgment to be incorrect in light of the unresolved factual questions concerning Holder's knowledge at the time of the novation, we do not reach this step of the analysis.