In re ALEXANDRIA INVESTMENTS, INC., Debtor.

BOWIE VENTURE, A Maryland Partnership, Movant,

v.

ALEXANDRIA INVESTMENTS, INC., Respondent.

Bankruptcy No. 83–A–1649.

Motion No. 83–M–0463A.

United States Bankruptcy Court, D. Maryland, at Rockville.

Jan. 30, 1984.

---

Richard Gins, Washington, D.C., for debtor/respondent.

Paul Rosenberg, Camp Springs, Md., for movant.

## MEMORANDUM OF DECISION

PAUL MANNES, Bankruptcy Judge.

Bowie Venture ("Bowie"), a Maryland general partnership, seeks relief from the stay of 11 U.S.C. § 362 so as to permit it to proceed in state court. Bowie claims that no landlord-tenant relationship exists between it and the debtor, and that Bowie should be permitted to retake the premises.

While all parties agree that the tenant, whoever that may be is in default in rent payments and other covenants of the lease, debtor urges that it can make those payments forthwith.

### FINDINGS OF FACT

Bowie, as landlord, and Subway Management, Inc. ("Subway") as tenant, entered into a lease for a term beginning November 1, 1981, and ending December 31, 1991. Subway was to operate a submarine sandwich shop in The Market Place shopping center located in Bowie, Maryland. Subway is a franchisor of such enterprises. Because of a reluctance on Subway's part to submit financial data to Bowie, the latter required that Subway furnish a guarantor of its performance. Subway produced its franchisee, Rehab, Inc. ("Rehab"), whose principal was Mr. Surinder S. Dhillon, to furnish the guaranty.[1] What results is an odd upstream guarantee, that is, that the franchisee (Rehab) guarantees the performance of the franchisor (Subway).

Article XI of the lease as printed provided in part:

### ARTICLE XI

#### Assignment and Subletting

11.01 *By Tenant*

Tenant shall not assign this lease in whole or in part or sublet the whole or part of the Demised Premises, without the prior written consent of Landlord. Landlord's consent to any assignment or subletting shall not constitute a waiver of the necessity for such consent to any subsequent assignment or subletting. Tenant, and the Guarantors, if any, shall remain fully liable under this lease and shall not be released from performing any of the terms, covenants, and conditions contained herein.

This lease may not be assigned and/or sublet more than twice without Landlord's prior written consent, which may be granted or withheld at Landlord's sole discretion.

Tenant shall pay to Landlord an amount not to exceed $250.00 each time this lease is assigned or sublet for time expended in processing such assignment or subletting.

11.02 *By Landlord*

Landlord reserves the right to assign this lease to any person, corporation, or other entity. Upon receiving written notice of any such assignment, Tenant agrees to attorn to such assignee as Landlord in all future matters hereunder.

However, the second and third paragraphs were lined out as above. This was done during the negotiation of the lease so as to facilitate assignment of the lease by Subway.

For whatever reason, Subway never requested to be permitted to assign or sublet

---

1. Pursuant to Bankruptcy Rule 9027, Rehab, Inc. has removed to this court a state court action filed against it by Bowie. Bowie seeks to enforce Rehab's guarantee in that action.

the store to its original franchisee. When the principal of Rehab died, the franchise was transferred to Alexandria. To compound Subway's dereliction, Subway never took any steps to assign the lease or sublet the premises to Alexandria.

The remainder of the facts may be adduced from the correspondence between the parties:

*October 21, 1982*, Subway advises Bowie, "that the SUBWAY Sandwich Shop operation formerly operated by Mr. Surinder S. Dhillon will not (sic) be under the management of Gurbachan Singh Gill and Rajdevinder Singh Nagra, d/b/a Alexandria Investment, Inc." (The testimony indicated that the "not" was a typographical error, and that the sentence should have read "now.")

*November 12, 1982*, Bowie writes Subway noting the receipt of the check in the sum of $1,889.66 "from a gentleman named Sam Yarborough," and concluding, "Please be advised that we are crediting this check to your account with the explicit understanding that in no way is this to be construed as an assignment or subletting of the referenced Subway store by the Landlord, Bowie Venture." Attached to the letter was a photocopy of Article XI of the Lease Agreement.

*December 7, 1982*, Bowie writes to Alexandria Investments, Inc., stating, "As we advised in our certified letter dated December 2, 1982, we will only accept checks from the Tenant (Subway Management, Inc.) for the subject space," and concluding, "In the future, *all* monies due under your lease must be received in our office *by the first of the month* or we will have no other choice but to impose late charges."

*May 11, 1983*, Bowie writes to Alexandria noting the non-delivery of the 1st Quarter 1983 Sales Statement and the Annual CPA Statement for Calendar Year 1982. The last two sentences of that letter provided, "Both of these items will be due in our office by *no later than Thursday, May 19, 1983* or we will have no other choice but to place you in default of your lease. You should act accordingly."

*June 27, 1983*, Bowie's writes to Subway stating in its first paragraph, "Enclosed is a copy of a letter from Modern Accounting Systems stating that Alexandria Investment, Inc. 'has taken over the lease of Bowie...'. For the record, I wish to state that Subway Management, Inc. is the correct Tenant for the referenced Subway store at The Market Place and in no way do we recognize Alexandria Investment, Inc. as a tenant, assignee, or sublessee." The last paragraph states, "Please be advised that in addition to the above, we received a check returned by our Bank for insufficient funds in the amount of $1,912.33 (drawn on Alexandria Investment, Inc.) representing June 1983 rental. I have requested another check by telephone on two separate occasions, however, as of this date, I still have not received this replacement check. You should be advised that the lease calls for all rents to be paid by the first of each month and unless we receive the July 1983 rental by July 1st along with the June 1983 replacement rental check, we will have no other choice but to require all future checks to be submitted by the Tenant (Subway Management, Inc.) in certified form, as is allowed in Article 16.01 of your lease."

*December 8, 1983*, Bowie's writes to Subway stating in its entirety, "Per our telephone conversation this afternoon, enclosed are two letters, one dated November 12, 1982 and the other dated June 27, 1983 (certified), from our office to your main office in Connecticut. You will note that both of these letters clearly state the Landlord's position that Bowie Venture did not acknowledge or recognize Alexandria Investments, Inc. as a tenant, assignee, or sublessee at any time. Our position remains unchanged in that we only recognize Subway Management, Inc. as the Tenant to the referenced lease with the only other party to said lease being the Guarantor—Rehab, Inc."

### DISCUSSION

This Chapter 11 proceeding was filed on November 9, 1983, and the motion for relief

from the automatic stay was filed on December 20, 1983. The matter was tried on January 18, 1984. Bowie offered the testimony of its managing general partner and the partner charged with keeping the records. Alexandria's only witness was John J. Martin, the director of leasing of Subway.

Unlike most Chapter 11 proceedings, this case does not involve the application of 11 U.S.C. § 365. Section 365 has been described as an exhaustive legislative effort to define and to codify the rights of debtor/tenants. At the outset, under § 365(a) the debtor in possession is given the power to assume or reject any executory contract or unexpired lease of the debtor. Under § 365(b) if there is any default, the Code provides for cure, compensation, and adequate assurance of future performance. That is not the issue in this case. In the present case, the issue is whether there is a lease at all. Before reaching that question, the court finds that the debtor has a property interest sufficient to make the filing of this § 362 hearing a necessity. *See In re Pagoda International, Inc.*, 26 B.R. 18 (Bkrtcy.Md.1982). However, the court finds that the debtor does not have any equity in the subject property. Debtor has not sustained its burden of showing that the property is required for an effective reorganization.

The court finds neither a waiver of the provisions of Article XI of the Lease relating to assignment or subletting nor an estoppel operating to bar the landlord from relying upon the express provisions of the lease. "An essential element of estoppel is that the person sought to be estopped must be guilty of some wrongful or unconscientious (sic) conduct on which the other party has relied and been misled to its injury." *Food Fair Stores, Inc. v. Blumberg*, 234 Md. 521, 200 A.2d 166, 172 (1964). No such element is present here. While debtor in possession argues that the landlord did nothing in the year that it knew of the presence of Alexandria in the premises, that does not rise to an estoppel. This case may be distinguished from *Canary v. Wagner*, 191 Md. 413, 62 A.2d 257 (1948), involving both a 20-year tenancy and substantial improvements to the property.

Maryland law gives landlords the absolute right to prohibit assignments and subletting. While § 365 of the Bankruptcy Code, and bankruptcy proceedings in general, constantly modify and affect the rights established by state law, *Wright v. Union Central Life Ins. Co.*, 304 U.S. 502, 517, 58 S.Ct. 1025, 1038, 82 L.Ed. 1490 (1938), there must be a property right in existence to be affected. Although the bankruptcy court may accomplish miraculous feats with respect to restructuring leases, the court does not have the power to produce a spontaneous generation of a lease relationship where none existed before. Maryland courts have consistently upheld provisions with respect to the dictatorial powers of landlords to prohibit assignments. Most recently, in the case of *Citizens Bank & Trust Co. v. Barlow Corp.*, 295 Md. 472, 456 A.2d 1283, 1290 (1983), the Court of Appeals pointed out:

A further difficulty with this argument by Citizens is that it is counter to *Jacobs v. Klawans*, 225 Md. 147, 169 A.2d 677 (1961). We there said that "the right of the lessor to select a lessee of his own choosing to occupy and use his property offsets, if it does not outweigh, any evils flowing from the enforcement of the restriction on alienation," and that the landlord in that case had a right to refuse giving consent "even if we assume that such consent was withheld arbitrarily and unreasonably." *Id.* at 152, 169 A.2d at 679. Citizens points out that Restatement (Second) of Property, § 15.-2(2) (1977) has embraced the minority position that a "landlord's consent to an alienation by the tenant cannot be withheld unreasonably, unless a freely negotiated provision in the lease gives the landlord an absolute right to withhold consent."

The court finds no waiver on the part of the landlord. Each letter from the landlord, except for the letter of May 11, 1983, contained a reaffirmation of its reliance upon the lease as drafted and a refusal to

accept Alexandria Investments, Inc., as its tenant. The court finds no conduct from which the waiver could be implied. Bowie looked to its tenant, Subway, to perform. Furthermore, paragraph 18.13 of the Lease provides:

18.13 *Waiver*

The waiver by Landlord or Tenant of any breach of any term, covenant, or condition herein contained shall not be deemed to be a waiver of any subsequent breach of the same or any other term, covenant, or condition herein contained. The acceptance of rent by Landlord shall not be deemed a waiver of any breach by Tenant regardless of knowledge of such breach at the time of acceptance of such rent. No covenant, term, or condition of this lease shall be deemed to have been waived unless in writing signed by the party to be charged thereby.

The court, on the basis of this finding, cannot find any act of Bowie inconsistent with its intention to rely upon its right to refuse assignment. *Bargale Industries, Inc. v. Robert Realty Co.*, 275 Md. 638, 343 A.2d 529, 533 (1975); *Holder v. Maaco Enterprises*, 644 F.2d 310 (4th Cir.1981) (Maryland law ... instructs us that waiver of legal rights is a serious matter.)

Having found that Bowie did nothing to surrender its rights under the Lease, the court finds nothing that Bowie did to cause Alexandria to change its position. First, Alexandria plunged into this lease without any action whatsoever on the part of Bowie. The first knowledge that Bowie had that Alexandria was in the picture was with the cryptic letter from Subway of October 21, 1982. Bowie's response to that letter was prompt and unambiguous. Bowie's forebearance in not ejecting Alexandria does not permit the latter to bootstrap its way into the lease. The tenant remains Subway. While Alexandria's woes may not be of its own making. Alexandria may look to the entity responsible—Subway. Subway failed to do its duty, both at the inception of the agreement with Rehab and at the time of the sale of the franchise to Alexandria. However, Bowie did nothing to cause this distress other than to insist

upon its legal rights. Under the law of Maryland, in the peculiar circumstances of this case, Bowie has the right to do so, notwithstanding Title 11 of the United States Code.

The court finds that the debtor has no interest in the lease, and that the property is not necessary to an effective reorganization. The court will therefore pass an order terminating the stay of 11 U.S.C. § 362(a) to permit Bowie Venture to proceed in the courts of Maryland.