Frank M. CEDRONE, Trading As "Sugarloaf Associates," a Limited Partnership

v.

UNITY SAVINGS ASSOCIATION, An Illinois Corporation

v.

The TITLE INSURANCE CORPORATION OF PENNSYLVANIA.

Frank M. CEDRONE, Trading As "Sugarloaf Associates," a Limited Partnership

v.

TALMAN HOME FEDERAL SAVINGS & LOAN ASSOCIATION

v.

The TITLE INSURANCE CORPORATION OF PENNSYLVANIA.

AMERICAN BANK & TRUST COMPANY

v.

TALMAN HOME FEDERAL SAVINGS & LOAN ASSOCIATION

v.

The TITLE INSURANCE CORPORATION OF PENNSYLVANIA.

Civ. A. Nos. 82–0811, 82–2838 and 82–4856.

United States District Court, E.D. Pennsylvania.

May 21, 1985.

Joseph A. Coffey, Jr., Lawrence A. Katz, Philadelphia, Pa., for Cedrone.

Kathleen Milsark, Harvey Bartle, III, Philadelphia, Pa., for Unity & Talman.

E. Gerald Donnelly, Jr., Philadelphia, Pa., for Title Ins. Corp.

Joseph M. Hankins, Philadelphia, Pa., for American Bank.

CLIFFORD SCOTT GREEN, District Judge.

I

These related cases concern an aborted real estate transaction. The transaction was to include the sale of, and financing construction on, 3,500 acres of partially developed land in the Luzerne and Schuylkill counties of Northeastern Pennsylvania. A part of the land was owned by American Bank and Trust Company of Pennsylvania ("American Bank"). A second part was owned by Unity Savings and Loan Association ("Unity"). A third portion of the land, however, was the subject of a title dispute between American Bank and Unity. Also involved in the dispute was the Title Insurance Company of Pennsylvania ("TICP")

which had insured Unity's interest in the title to the land in dispute.[1]

In the first two of three related actions filed in this court (Civil Actions No. 82–811 and No. 82–2838), plaintiff, attempted purchaser Frank M. Cedrone, trading as Sugarloaf Associates, a Limited Partnership ("Cedrone"), has sued defendant Unity[2] as seller and construction lender contending that Unity breached agreements to convey Unity's land and to fund a construction loan. Unity, while denying any liability, impleaded TICP as a third party defendant in both of the Cedrone actions. Unity contends that if this court finds it liable to Cedrone in either action, TICP is in turn liable over to Unity. TICP subsequently counterclaimed against Unity (in both actions) for counsel fees incurred prior to the aborted closing and as a result of this litigation.

In the third related case (No. 82–4856), plaintiff American Bank has sued Talman for breach of contract and tortious interference with contract arising out of the same transaction. Talman has also impleaded the title insurance company, TICP, as a third party defendant in the American Bank action.[3]

Presently pending before this court are several motions: Defendant Unity has filed motions for summary judgment against plaintiff Cedrone in actions No. 82–811 and No. 82–2838; it has also filed a summary judgment motion against plaintiff American Bank in action No. 82–4856; and, it has filed summary judgment motions against third party defendant TICP's counterclaims in all three cases. Finally, third-party defendant TICP has filed cross motions for summary judgment against defendant/third-party plaintiff Unity in all three actions. For the reasons discussed *infra*, all of Unity's motions will be denied, and TICP's cross motions against Unity will be denied.

After a listing of the relevant facts, as disclosed by the record, there follows a discussion of the resolution of the individual summary judgment motions.

## II

In 1980 and 1981, Cedrone negotiated with both American Bank and Unity to purchase their respective interests in the land at issue. On March 25, 1981, Cedrone signed separate Agreements of Sale and Purchase with both sellers.[4] Both sale agreements were conditioned upon the settlement and termination of all title dispute litigation between and among American Bank, TICP, and Unity with regard to the real estate at issue. Both agreements were also conditioned on each other, i.e., the sale to Cedrone by American Bank was conditioned on Cedrone's purchase from Unity and *vice versa*. Additionally, Cedrone's agreement with Unity was further conditioned upon Cedrone's receipt of construction loan financing from Unity.

In an attempt to close the transaction, the parties, either personally or through their respective counsel, met several times during the spring and summer of 1981. Finally, on July 17 of that year, American Bank, TICP, and Unity (through counsel) signed a "Settlement Agreement" with respect to the lawsuits regarding the title dispute between and among them. By

---

1. The title dispute was the subject of several lawsuits collateral to this action between and among Unity, through TICP, and American Bank.

2. Three days before the institution of Cedrone's first suit (No. 82–811), defendant Unity's assets and liabilities were purchased by Talman Home Federal Savings and Loan Association ("Talman"). Cedrone subsequently brought suit (No. 82–2838) against Talman. Because the second suit is virtually identical to the first, the defendants, except where specifically noted, will hereinafter be jointly referred to as Unity.

3. For the sake of continuity Talman as defendant/third party plaintiff in the American Bank suit, will also hereinafter be referred to as Unity. *See supra* note 2.

4. Cedrone's land sale agreement with American Bank will hereinafter be referred to as the American Bank Sale Agreement. Similarly, his land sale agreement with Unity will be referred to as the Unity Sale Agreement.

handwritten addendum, the Settlement Agreement was also conditioned upon both the American Bank sale to Cedrone and the Unity sale to Cedrone.[5] Thus, the American Sale Agreement, the Unity Sale Agreement, and the Settlement Agreement were all conditioned on one another.

The same day that the Settlement Agreement was signed, July 17, 1981, Cedrone and Unity, through counsel, also entered into a Construction Loan Agreement. This agreement was conditioned upon, *inter alia*, settlement of the title disputes and Cedrone submitting to Unity a certificate of insurance with regard to the improvements covered by the loan. The certificate was to provide, among other things, not less than thirty days notice to Unity prior to cancellation or material changes in the policies. Additionally, the company issuing the policies and the certificate(s) evidencing same had to have had an A+ rating from Best's [6] for that year.

All parties were present (Unity by counsel) at a meeting in Philadelphia to complete the steps necessary to close the transaction. This meeting was held on July 17, 1981 (the day that both the Construction Loan Agreement and the Settlement Agreement were signed). Various documents were signed that day, and checks for the payment of money (required to be exchanged by the Settlement Agreement) were drawn and physically present in the settlement room. Unity, however, did not fund the construction loan on that day. Nor did it fund the loan, or respond to inquiries from Cedrone regarding same, for several days thereafter. Indeed, it never funded the loan, nor sold the land to Cedrone. It is for damages purportedly aris-

ing out of these omissions that plaintiff Cedrone has brought suit.

In the days following the July 17th attempted closing, TICP, in addition to Cedrone and American Bank, attempted to reach representatives of Unity. Unity, however, did not respond to phone calls from any of the parties involved in the transaction. After four days of silence from Unity, TICP through counsel, sent a letter (hand delivered to counsel for Unity in Philadelphia and simultaneously federal expressed to Unity officials in Chicago) requesting that Unity furnish a statement of its position regarding the Cedrone settlement within twenty-four hours or suffer the termination of its title insurance and the destruction of the Settlement Agreement by TICP. When no response was forthcoming from either Unity or its counsel, TICP terminated Unity's title insurance and directed the physical destruction of the Settlement Agreement. When Unity finally responded, after the time limit imposed by TICP and after TICP's action, it declared the real estate deal with Cedrone null and void. These civil actions ensued.

### III

#### A. *Unity's Summary Judgment Motions*

As noted previously, Unity has moved for summary judgment: (1) against plaintiff Cedrone; (2) against plaintiff American Bank; and, (3) against third party defendant TICP's counterclaims.

Rule 56 of the Federal Rules of Civil Procedure governs when summary judgment can be granted. That Rule precludes such a grant unless it can be shown "that there is no genuine issue as to any material fact and that the moving party is entitled

---

**5.** The handwritten addendum provided in substance, that the Settlement Agreement would not become effective until settlement on the sale of the land to Cedrone by both American Bank and Unity was held and TICP paid $207,000 to Unity. Additionally, the signatories to the addendum, representatives of all the parties (save Cedrone), reserved the right to call for the physical destruction of the Settlement Agreement up until the time that settlement on the land was held and TICP paid the money to Unity.

**6.** *Best's Insurance Reports* offers comprehensive reports on the financial position, history, and transactions of insurance companies operating in the United States. Best's also rates each insurance company according to its comparative position in the industry. *See Best's Insurance Reports* (85th ed. 1984).

to a judgment as a matter of law." Fed.R. Civ.P. 56(c). *See also Poller v. Columbia Broadcasting System*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); *Brown v. Bellaplast Maschinenbau*, 104 F.R.D. 585, 587 (E.D.Pa.1985); *Teamsters Pension Fund v. Philadelphia Fruit Exchange*, 603 F.Supp. 877, 879 (E.D.Pa.1985).

With the above listed principle in mind, I now address each motion for summary judgment individually.

1. *Unity's motion for summary judgment as to plaintiff Cedrone's claims.*

Cedrone seeks money damages for Unity's alleged breach of the Construction Loan Agreement and Unity Sale Agreement. Unity asserts, however, that there are no genuine issues as to any material facts, and that the failure of Cedrone to satisfy certain conditions precedent contained in the allegedly breached agreements excuses its performance under the agreements.[7] Since the sale agreement was conditioned on Cedrone's receipt of construction loan financing, I will address Unity's arguments with regard to the Construction Loan Agreement first.

As noted previously, the Construction Loan Agreement contained an insurance condition. It is undisputed that Cedrone failed to strictly comply with the terms of said condition.[8] This fact according to Unity is enough to excuse Unity's performance under the Construction Loan Agreement, thereby allowing it to walk away from the entire deal without liability. Cedrone counters that Unity, by accepting the non-complying insurance binder, together with making oral representations of satisfaction, waived strict compliance with the insurance condition.

█ Federal courts sitting in diversity, as I do here, must apply substantive state law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Thus, Pennsylvania contract law governs the cases *sub judice*. It is indeed the well-settled law of the Commonwealth that a written contract may be modified by a subsequent oral agreement, and such modification may be accomplished by words, conduct, or both. *Knight v. Gulf Refining Company*, 311 Pa. 357, 361, 166 A. 880, 882 (1933). *See also Chung v. Park*, 377 F.Supp. 524, 529 (M.D.Pa.1974), *aff'd.*, 514 F.2d 382, 385 (3d Cir.), *cert. denied*, 423 U.S. 948, 96 S.Ct. 364, 46 L.Ed.2d 282 (1975); *Betterman v. American Stores Company*, 367 Pa. 193, 200, 80 A.2d 66, 71, *cert. denied*, 342 U.S. 827, 72 S.Ct. 49, 96 L.Ed. 625 (1951).

█ It is similarly well settled that the question of waiver is a question of fact ordinarily reserved for the jury. *See Batchelder v. Standard Plunger Elevator Company*, 227 Pa. 201, 207, 75 A. 1090, 1092 (1910). *See also In re Metropolitan International, Inc.*, 616 F.2d 83, 86 (3d Cir.1980); *Linda Coal and Supply Co. v. Tasa Coal Co.*, 416 Pa. 97, 101, 204 A.2d 451, 454 (1964); *Hanover Construction Company v. Fehr*, 392 Pa. 199, 139 A.2d 656 (1958); *Cole v. Philadelphia Co.*, 345 Pa. 315, 26 A.2d 920 (1942). Waiver can be determined as a matter of law, however, in cases "where only one reasonable conclusion can be drawn from the undisputed facts." *In re Metropolitan International, Inc., supra* at 86; *Linda Coal and Supply Co. v. Tasa Coal Co., supra* 416 Pa. at 181, 204 A.2d at 454. Unity claims that the Pennsylvania Statute of Frauds, Pa.Stat. Ann. Title 33 § 1 (Purdon 1984), precludes the reasonable interpretation of its *actions* or *words* as waiver. It argues that since the Statute requires any effective subsequent modification of the signed Construction Loan Agreement be in writing, there can be no reasonable conclusion that Unity waived any of the terms by actions or

---

7. Unity also argues that even if it did breach the agreements, the Unity Sale Agreement contains a provision which would limit any damages that Cedrone could seek as a matter of law. This argument will be addressed *infra*.

8. He submitted an insurance binder from insurance companies which were rated only A and B+ respectively, not A+ as required by the agreement. Moreover, the binder submitted failed to provide for the mandatory cancellation notice as also required.

words as claimed by Cedrone. This argument, however, misses the mark. While the Statute does require any subsequent modification of a contract covered thereunder (e.g. a contract to convey an interest in land) to be in writing, *United States v. 29.16 Acres More or Less,* 496 F.Supp. 924, 928 (E.D.Pa.1980), it does not govern the subsequent modification of an agreement not within the Statute's original coverage. *See Bonczek v. Pascoe Equipment Co.,* 304 Pa.Super. 11, 450 A.2d 75 (1982). A construction loan agreement is ordinarily a contract to fund a loan to construct improvements on land, rather than one to convey an interest in land. Unity points to no evidence of record which would support an inference that this construction loan agreement was intended to convey such an interest. Accordingly, it is not governed by the Statute of Frauds. *Cf. Atkins v. Pore,* 321 Pa.Super. 57, 467 A.2d 891 (1983) (Statute not applicable to contract to pave streets rather than convey land interest). Thus, in the instant cases, neither the Construction loan agreement nor any effective subsequent modification thereof, needed to have been in writing. Accordingly, whether Unity did in fact waive the insurance condition is properly a jury question. This question presents a genuine issue as to material fact, thereby precluding summary judgment on this issue.

Notwithstanding the above, Unity points to an "unsatisfied" condition of both the Construction Loan Agreement and the Unity Sale Agreement which it claims excuses its performance under those documents as a matter of law, i.e., the settlement of the title disputes. It is, however, undisputed that on July 17, 1981, a settlement agreement had been memorialized and signed by all parties. That agreement provided that it would not become effective until settlement for the sale of the land (by both sellers) to Cedrone was held and TICP paid $207,000 to Unity. *See supra* note 5. As settlement was in fact being held on that very day, the agreement was well on the way to becoming effective. The only impediment to its effectiveness was the payment of $207,000 to Unity by TICP.

It is also undisputed that TICP had drawn and tendered a check for payment of the $207,000 to Unity at the July 17, 1981 settlement meeting. *See* Kurtz Deposition at 144. Equally undisputed is the fact that Unity did not accept the money. *See id.* Basic Pennsylvania contract law provides that a party to a contract cannot escape liability under his obligation on the ground of failure of the occurrence of a condition precedent to the establishment of such liability or to the maintenance of an action upon the contract, where he, himself has caused that failure. *See e.g. Arlotte v. National Liberty Insurance Co.,* 312 Pa. 442, 445, 167 A. 295, 296 (1933). A corollary to this principle is that the law implies in every contract a duty of good faith:

> "In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract. Accordingly, a promise to do an act necessary to carry out the contract must be implied." 8 P.L.E., Contracts, § 140.

*D.B. Van Campen Corp. v. Building & Construction Trades Council of Philadelphia,* 202 Pa.Super. 118, 122, 195 A.2d 134, 136–37 (1963).

Unity claims that it acted in good faith intending to review all of the documents required to be submitted by Cedrone in accordance with the Construction Loan Agreement before accepting the money and funding the loan. Cedrone argues that Unity's action is indicative of its bad faith intent to get out (at any cost) of a deal to which it had already committed itself. Since summary judgment is generally inappropriate where intent is at issue, *see e.g. Associated Hardware Supply Co. v. Big Wheel Distributing Co.,* 355 F.2d 114, 121 (3d Cir.1966), whether Unity acted in good faith raises a factual question which should properly be presented to the jury. Thus,

summary judgment is precluded with regard to this issue also.

■ Finally, Unity argues as a matter of law that Cedrone may only recover as damages the costs incurred in certifying title to the land at issue. In support of this proposition, Unity quotes language from the sale agreement. This language reads as follows:

> If title to the Real Property cannot be conveyed to Purchaser [Cedrone] at the time of settlement in accordance with the requirements of this Agreement, or if any condition set forth in Article 6 below has not been fulfilled, then Purchaser shall have the option (i) of taking such title as Seller [Unity] can convey and/or waiving the unfulfilled condition, with abatement of the purchase price only to the extent of monetary liens of an ascertainable amount; or (ii) of terminating Purchaser's obligation under this Agreement and being reimbursed by Seller for the costs incurred by Purchaser in attempting to certify title.

Unity Sale Agreement at 3. While the above quoted language identifies options available to Cedrone if Unity did not convey title to the land as promised, it does not state that such options are Cedrone's exclusive remedies, nor does it explicitly reject, prohibit, or prevent Cedrone's use of other remedies. "To construe such a clause as excluding the other remedies given by law, would be converting a privilege into a burden." *Mendenhall v. The West Chester and Philadelphia Railroad Co.*, 36 Pa. 145 note (1860) (opinion of Lewis, C.J.). Moreover, it is a basic rule of construction that "[t]he granting of one remedy by express contract, is not an exclusion of others which the law annexes to the contract, unless they are so inconsistent with each oth-

er as plainly to imply such exclusion." *Id.*[9] Finding no such plain implication here, this court cannot say as a matter of law that Cedrone is limited to the remedies set forth in the language upon which Unity relies.

For the reasons set forth above Unity's summary judgment motion against Cedrone will be denied.

### 2. *Unity's summary judgment motion against plaintiff American Bank*

American Bank alleges three causes of action against Unity, two in contract and one in tort. First, it asserts that it was a third party beneficiary of the Unity Sale Agreement between Unity and Cedrone, which it claims Unity breached. Second, American Bank claims that Unity breached the Settlement Agreement to which it (along with TICP and Unity) was a party. Finally, American Bank claims that Unity tortiously interfered with its (American Sale Agreement) land sale agreement with Cedrone.

■ Unity asserts, for various reasons, that there are no disputed facts and it is entitled to judgment as a matter of law with regard to all three of American Bank's claims. As noted previously, however, there is a factual question surrounding Unity's actions regarding the Settlement Agreement upon which the Unity Sale Agreement was conditioned. This question precludes summary judgment on American Bank's claims arising out of Unity's purported breach of those agreements. As will be demonstrated below, a similar factual question precludes summary judgment for Unity on American Bank's tortious interference claim.

Section 766 of the Restatement (Second) of Torts (1979),[10] defines intentional interference with a contractual relationship as

---

**9.** The language relied on by Unity must be compared with language of the same agreement which clearly and unambiguously limits the *sellers* remedies in event of purchaser's default. It reads: "In the event Purchaser [Cedrone] shall default by failing to *complete settlement* under this Agreement, then Seller [Unity] agrees to refrain from proceeding as against the Purchaser to require specific performance of this Agreement *or to seek any other remedy* [ies] *provided* *or available at law."* Unity Sale Agreement at 12 (emphasis added).

**10.** This section was adopted by the Pennsylvania Supreme Court in *Adler, Barish, Daniels, Levin and Creskoff v. Epstein,* 482 Pa. 416, 439, 393 A.2d 1175, 1181–82 (1978), *appeal dismissed,* 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979).

*"intentionally* and improperly inter-fer[ing] with the performance of a contract ... between another and a third person by inducing or otherwise causing the third person not to perform the contract..." (emphasis added). Whether Unity *intentionally* caused Cedrone not to perform under the American Bank sale agreement raises a factual question which renders summary judgment inappropriate on this claim. *See Associated Hardware Supply Co. v. Big Wheel Distributing Co., supra.* Thus, Unity's motion for summary judgment with regard to American Bank's claims will also be denied.

3. *Unity's summary judgment motions against third-party defendant TICP's counterclaims and TICP's cross motions*

Unity also moves for summary judgment against TICP on TICP's counterclaims against Unity in all three actions. In its third-party complaint, Unity alleged that TICP's repudiation of the Settlement Agreement and title insurance policies under which TICP insured Unity rendered TICP liable to Unity for all sums that might be awarded to Cedrone in his suit against Unity. After denying the allegations of the complaint and raising defenses, TICP counterclaimed. TICP sought damages based on Unity's alleged breach of the Unity Sale Agreement, Construction Loan Agreement, and the Settlement Agreement. Additionally, TICP sought attorneys' fees pursuant to 42 Pa.Cons.Stat. Ann. § 2503(9) (Purdon 1984) which provides for the recovery of counsel fees from a party whose conduct in commencing suit is "arbitrary, vexatious or in bad faith."

■ Here too, Unity claims that there are no material facts at issue and that it is entitled to judgment as a matter of law. While TICP joins with Unity in asserting that there are no genuine issues as to any material fact, it differs as to the party it claims is entitled to judgment as a matter of law. Neither party's arguments are persuasive in light of the factual questions presented with regard to the alleged breaches of the agreements at issue. Moreover, Unity's good or bad faith action in bringing suit against TICP is no less a disputed factual question than its good or bad faith attempt to consummate or renege upon the agreements. Accordingly, the cross motions will be denied.

IV

For the reasons discussed above, all of the summary judgment motions will be denied.